**In re Anthony L. HERRERA and Angeline Herrera, Debtors.**

**Bankruptcy No. 96 B 02069.**

United States Bankruptcy Court, N.D. Illinois, Eastern Division.

March 28, 1996.

Gerald Mylander, Chicago, IL, for Jack McCullough, Chapter 13 Trustee.

Angeline Herrera, Westmont, IL, pro se.

Jennifer Prager Sodaro, P.C., Oak Brook, IL, for Town of Cicero.

Jack McCullough, Chapter 13 Trustee.

Anthony Herrera, Westmont, IL, pro se.

Michael L. Flynn, Business Legal Service, Inc., Downers Grove, IL, for William M. Miller.

### MEMORANDUM OPINION

JOHN H. SQUIRES, Bankruptcy Judge.

This matter comes before the Court on the motion of Jack McCullough, the Chapter 13 Standing Trustee (the "Trustee"), to dismiss this case with a request for a bar to refiling under 11 U.S.C. § 109(g)(1), and on the motion of Anthony and Angeline Herrera (collectively the "Debtors") for a finding of a willful violation of the automatic stay under 11 U.S.C. § 362(a) against the Town of Cicero, Illinois, William M. Miller ("Miller"), and his attorney Michael Flynn ("Flynn"), seeking an award of actual and punitive damages, costs, and attorneys' fees pursuant to 11 U.S.C. § 362(h). For the reasons set forth below, the Court hereby grants the motion of the Trustee and dismisses this Chapter 13 case pursuant to § 109(g)(1). In addition, the instant case is dismissed with prejudice pursuant to 11 U.S.C. § 349(a) and the Debtors are prohibited from filing another bankruptcy case for a period of one year from the entry of this Opinion and Order on the docket. The Court denies the motion of the Debtors and holds that the Town of Cicero's actions are excepted from the automatic stay pursuant to 11 U.S.C. § 362(b)(4). The Court also denies the Debtors' motion as to Miller and Flynn. Additionally, the Court denies the Debtors' request for a default judgment against Miller and Flynn.

Further, the Court finds that Anthony Herrera has engaged in the unauthorized practice of law by preparing, filing, signing, and arguing various pleadings on behalf of his wife, Angeline Herrera contrary to 11 U.S.C. § 110(k). The Court strongly cautions Anthony Herrera against continuing to engage in this activity for her or anyone else.

### I. JURISDICTION AND PROCEDURE

The Court has jurisdiction to entertain these motions pursuant to 28 U.S.C. § 1334(b) and Local General Rule 2.33(A) of the United States District Court for the Northern District of Illinois. They are core proceedings under 28 U.S.C. § 157(b)(2)(A) and (O).

### II. FACTS AND BACKGROUND

The Debtors filed the instant Chapter 13 case on January 25, 1996. This case is the Debtors' fourth Chapter 13 filing in less than a year. The case files contain papers which show that Miller is a secured creditor of the Debtors, although not so scheduled in this case. The Debtors executed a promissory note in the amount of $52,547.74 with Midwest Bank of Hinsdale, which was subsequently assigned on September 23, 1993 to Miller. The Debtors executed a mortgage in favor of Miller, which secured the note. On November 19, 1993, Miller filed a foreclosure proceeding against the Debtors in the Circuit

Court of Cook County with respect to property commonly known as 3234 South 49th Avenue, Cicero, Illinois (the "Cicero Property"). Thereafter, on March 20, 1995, Miller was granted an order appointing him as mortgagee in possession.

Simultaneous to the foreclosure proceeding in Cook County, Miller filed a forcible entry and detainer action against the Debtors in the Circuit Court of the Eighteenth Judicial Circuit, DuPage County, Illinois with respect to property known as 213 South Adams, Hinsdale, Illinois (the "Hinsdale Property"). On March 22, 1995, Miller received an order of possession for the Hinsdale Property and a monetary judgment in the sum of $15,-000.00 for unpaid rent due and $2,000.00 in attorney's fees. Consequently, Miller is also an unsecured creditor of the Debtors and is so scheduled, but as holding unliquidated and disputed claims in unknown amounts.

Subsequently, after the Debtors filed three post-trial motions, and the state court denied the motions, an eviction proceeding was scheduled for May 18, 1995. Prior to the completion of the eviction, Anthony Herrera (represented by an attorney) filed the first Chapter 13 case (95 B 10098) on May 18, 1995. The case was filed solely by Anthony. The Town of Cicero and Miller were scheduled as creditors. Miller was represented by Flynn. On June 2, 1995, Miller was granted relief from the automatic stay with respect to the Hinsdale Property. This case was subsequently dismissed pursuant to 11 U.S.C. § 1307(c)(1) and (4) on August 25, 1995, on the Trustee's motion because of Anthony's failure to attend the scheduled 11 U.S.C. § 341 meeting and failure to make any plan payments to the Trustee and comply with 11 U.S.C. § 1326(a)(1). Anthony's plan proposed to pay his creditors 100% of their allowed claims in 36 months through monthly installment payments of $505.00.

The second Chapter 13 case (95 B 11561) was filed pro se by Angeline Herrera on June 8, 1995, while Anthony's first case was pending. This second case was filed prior to another eviction proceeding scheduled by Miller on the Hinsdale Property for June 8,

1995. Miller, represented by Flynn, received partial relief from the automatic stay. On June 30, 1995, Angeline's case was ordered to be jointly administered with Anthony's case. Angeline's case was dismissed pursuant to § 1307(c) on July 14, 1995, on the Trustee's motion for Angeline's failure to timely file a plan and schedules as respectively required by Federal Rules of Bankruptcy Procedure 3015(b) and 1007(c). No payments were made by her pursuant to § 1326(a)(1) with the result that no dividends were paid to any creditor in this case, like Anthony's first case.

Thereafter, a third Chapter 13 case (95 B 18825) was filed pro se by both Debtors on September 11, 1995, seventeen days after dismissal of Anthony's first case. The Debtors, without explanation, did not list Miller as a secured creditor with regard to the Cicero Property or as an unsecured creditor with respect to the Hinsdale Property. Miller, again represented by Flynn, sought relief from the stay.[1] This third case was dismissed on January 19, 1996 pursuant to § 1307(c)(5) on the Trustee's motion for denial of confirmation of that plan on December 22, 1995. The joint plan filed in the third case was an obvious photocopy of the same plan filed in the first case. Anthony signed same and merely covered over the name and address of the attorney who represented him in the first case. No money was received by the Trustee from the Debtors in this case.

The instant case (96 B 02069) was filed by both Debtors on January 25, 1996, six days after dismissal of the third case. On February 9, 1996, the Debtors filed a plan and accompanying schedules and a statement of financial affairs. The plan proposes to pay creditors' claims in 60 monthly installments of $275.00. This plan is merely a photocopy of the plans filed in the first and third cases with changes only to the term and monthly payments proposed. To date, the Court has not held a confirmation hearing. Moreover, apparently no pre-confirmation plan payments pursuant to § 1326(a)(1) have been received by the Trustee or by Miller.

---

1. On January 26, 1996, the Court entered an order on Miller's motion for relief from the stay finding it moot because the case had been dismissed on January 19, 1996.

The Debtors filed their pending motion for a finding of a willful violation of the automatic stay against the Town of Cicero, Miller, and Flynn. The Debtors allege that the Town of Cicero has violated the automatic stay of § 362(a) by attempting to force entry into the Cicero Property. On February 15, 1996, the Circuit Court of Cook County, Illinois, entered an order requiring the Debtors to allow an inspection of the Cicero Property to take place on February 20, 1996. Instead of allowing the inspection on that date, the Debtors filed the instant "emergency" motion, now represented by Anthony Herrera of "Anthony L. Herrera & Associates, PC Bankruptcy Petition Preparer Pro-se." The Debtors contend, among other things, that the actions of the Town of Cicero violate the automatic stay and do not fall within any exception thereto, in particular § 362(b)(4), because its actions were not taken to protect lives, health, morals, or the general welfare. Further, in a rambling and confused reply to the Town of Cicero's response to the motion, the Debtors allege that Miller and Flynn are utilizing the Town of Cicero as their agent to somehow circumvent the automatic stay.[2]

### III. DISCUSSION

#### A. The Debtors' Motion

First, the Court will address the Debtors' motion with respect to the Town of Cicero. The Debtors claim the Town of Cicero violated the automatic stay by attempting to gain access to the Cicero Property to inspect it. The automatic stay of § 362 arises as a matter of law upon the filing of a petition for relief under the Bankruptcy Code. 11 U.S.C. § 362(a). The automatic stay prohibits "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case.... 11

U.S.C. § 362(a)(6). The automatic stay remains in force even after the confirmation of a Chapter 13 plan until the case is closed or dismissed, or until the discharge is granted or denied. 11 U.S.C. § 362(c)(2); *In re Ziegler*, 136 B.R. 497, 499 (Bankr.N.D.Ill.1992); *Littke v. Trustcorp Mortgage Co. (In re Littke)*, 105 B.R. 905, 909 (Bankr.N.D.Ind.1989). An individual debtor injured by a creditor's willful violation of the automatic stay is entitled to recover his actual damages, including costs and attorneys' fees, and in appropriate circumstances, punitive damages. 11 U.S.C. § 362(h); *see also In re Prairie Trunk Ry.*, 112 B.R. 924, 929 (Bankr.N.D.Ill.1990); *In re Prairie Trunk Ry.*, 125 B.R. 217, 219–22 (Bankr.N.D.Ill.1991), *aff'd, Consolidated Rail Corp. v. Gallatin State Bank*, 173 B.R. 146 (N.D.Ill.1992).

Section 362(b)(4) excepts from the automatic stay "the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power." 11 U.S.C. § 362(b)(4). Because § 362(b)(4) does not define "police or regulatory power," the legislative history assists in determining the scope of the exception contained therein:

> [W]here a governmental unit is suing a debtor to prevent or stop violation of fraud, environmental protection, consumer protection, *safety, or similar police or regulatory laws*, or attempting to fix damage for violation of such a law, the action or proceeding is not stayed under the automatic stay.

H.R.Rep. No. 595, 95th Cong., 1st Sess. 343 (1977), *reprinted in* 1978 U.S.Code Cong. & Admin. News 5787, 5963, 6299; S.Rep. No. 989, 95th Cong., 2d Sess. 52 (1978), *reprinted in* 1978 U.S.Code Cong. & Admin. News, pp.

---

2. On March 5, 1996, the Debtors filed two pleadings entitled "Debtors [sic] Request for a [sic] Order of Default and or Judgement [sic] for Violation of Rule 55(a) Federal Rule of Civil Procedure and/or Federal Bankruptcy Rule 7055." One pleading addresses Miller and the other addresses Flynn. The pleadings seek default judgments against Miller and Flynn for failing to respond to the Debtors' motion. A response by Miller was filed, however, on March 1, 1996. Federal Rule of Civil Procedure 55(a), incorporated by reference in Federal Rule of

Bankruptcy Procedure 7055 provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise, the clerk shall enter the party's default." Miller did, in fact, file a timely response to the motion. Flynn, as Miller's attorney, was not required to file a separate pleading. Thus, the Court denies the Debtors' request for an order of default against Miller and Flynn.

5787, 5838 (emphasis supplied). One of the purposes of this exception to the automatic stay is to protect public health and safety. *See Midlantic Nat'l Bank v. New Jersey Dept. of Environmental Protection*, 474 U.S. 494, 503–04, 106 S.Ct. 755, 760–61, 88 L.Ed.2d 859 (1986). The goal of preserving a debtor's bankruptcy estate is not always the dominant goal of bankruptcy proceedings. *Penn Terra Ltd. v. Department of Environmental Resources, Commonwealth of Pennsylvania*, 733 F.2d 267, 278 (3d Cir.1984). "The provisions of the Bankruptcy Code do not and are not intended to provide an automatic mechanism for relieving property owners of the unpleasant effects of valid local laws embodying police and regulatory provisions." *In re Kennise Diversified Corp.*, 34 B.R. 237, 245 (Bankr.S.D.N.Y.1983) (citation omitted).

The § 362(b)(4) exception has been narrowly construed to apply to the enforcement of state laws affecting health, welfare, morals, and safety. *Cash Currency Exchange, Inc. v. Shine (In re Cash Currency Exchange, Inc.)*, 762 F.2d 542, 555 (7th Cir.), *cert. denied*, 474 U.S. 904, 106 S.Ct. 233, 88 L.Ed.2d 232 (1985) (citing *State of Missouri v. United States Bankruptcy Court for the Eastern District of Arkansas*, 647 F.2d 768, 776 (8th Cir.1981), *cert. denied*, 454 U.S. 1162, 102 S.Ct. 1035, 71 L.Ed.2d 318 (1982)). This exception applies in instances where a governmental unit sues a debtor to enforce consumer protection laws, safety regulations, or similar police or regulatory laws. *See, e.g., State of Wisconsin v. Weller (In re Weller)*, 189 B.R. 467, 471 (Bankr.E.D.Wis. 1995) (State of Wisconsin's prepetition action against debtor for numerous violations of housing code held to be within a governmental unit's police or regulatory power and, thus, excepted from the stay); *In re Catalano*, 155 B.R. 219, 221 (Bankr.D.Neb.1993) (a condemnation proceeding by a city to remove a structure deemed unsafe constitutes the exercise of police or regulatory power by a governmental unit and is excepted from the automatic stay under § 362(b)(4)); *Lux v. County of Spotsylvania Board of Supervisors (In re Lux)*, 159 B.R. 458, 461 (Bankr. E.D.Va.1992) (county was acting pursuant to its police and regulatory powers and therefore fell within § 362(b)(4) exception when it disconnected debtors' home from water source because debtors were not in compliance with state building codes; rationale behind regulating water sources and occupancy of homes was to protect the health and safety of the residents and to ensure sanitary living conditions); *Smith–Goodson v. CitFed Mortgage Corp. (In re Smith–Goodson)*, 144 B.R. 72, 74–75 (Bankr.S.D.Ohio 1992) (city's action of serving notice on debtors for violations of city ordinances in connection with debtors' real property was within § 362(b)(4) exception as relating to matter of public safety and health in maintaining standards with respect to housing, fire prevention, and nuisances); *In re Synergy Dev. Corp.*, 140 B.R. 958, 960–61 (Bankr.S.D.N.Y.1992) (State of New York's prepetition action against debtor for failing to post $50,000 bond required for health clubs operating in state fell within § 362(b)(4) exception to the automatic stay as a consumer protection action). Moreover, the United States Supreme Court has held that a governmental unit is not required to demonstrate that the proposed exercise of the police or regulatory power is legitimate. *Board of Governors of the Federal Reserve System v. MCorp Financial, Inc.*, 502 U.S. 32, 40, 112 S.Ct. 459, 464, 116 L.Ed.2d 358 (1991).

The case at bar is similar to the *Weller* case. In *Weller*, the State of Wisconsin filed a prepetition action against the debtor for numerous violations of the City of Milwaukee's housing code with respect to property owned by the debtor. 189 B.R. at 469–70. A post-petition judgment was entered against the debtor and in favor of the State of Wisconsin. *Id.* at 470. The debtor argued that the judgment was entered in violation of the automatic stay. The bankruptcy court rejected the debtor's argument and held that the State of Wisconsin's actions against the debtor constituted an action by a governmental unit to enforce its police or regulatory power and, thus, fell within § 362(a)(4)'s exception to the automatic stay. *Id.*

The Court holds that the Town of Cicero's actions in obtaining the state court order requiring the Debtors to allow inspection of the Cicero Property falls within the scope of

§ 362(b)(4) as within its regulatory power to enforce local laws affecting health, welfare, and safety. Inspection of real property is an exercise of the Town of Cicero's police or regulatory power to protect the health, safety, and welfare of the people residing in that property. Obtaining the order of inspection was a legitimate exercise of the regulatory powers of the Town of Cicero and consistent with the Town of Cicero's duty to protect the public health, safety, and general welfare of its residents.

■ Next, the Court will consider the Debtors' motion as against Miller and Flynn. The Court rejects the Debtors' argument that the Town of Cicero is an agent of or acting on behalf of Miller or Flynn. The Debtors contend that because the Town of Cicero's attorney allegedly worked for a law firm where Flynn was an attorney, that somehow this lends credence to the Debtors' allegation that Miller and Flynn are utilizing the Town of Cicero as their agent. The Court finds that the Debtors' bare allegations on information and belief of same without any supporting evidence does not make it so. The Court offered all parties an opportunity to present evidence, but they declined and rested on their papers. There is no evidence before the Court to support the Debtors' contention that the Town of Cicero is an agent of or for Miller or Flynn. The mere fact that the Town of Cicero's current attorney may be or may have been previously associated with the law firm that Flynn was associated with does not, in and of itself, warrant a finding by the Court that an agency relationship exists between the Town of Cicero and Miller or Flynn. Because the Court finds that there was no violation of the automatic stay, it will not further address the Debtors' request for damages or costs under § 362(h) or the Debtors' requested order for a subpoena of Flynn's telephone records.[3]

## B. *The Trustee's Motion*

■ Next, the Court will address the Trustee's motion to dismiss the instant bankruptcy case. The Trustee maintains that the instant case was filed in bad faith and should be dismissed with a bar from refiling pursuant to § 109(g)(1). The Trustee states that the Debtors have not demonstrated or shown a change in circumstances from their prior cases and that the Debtors' multiple filings, their failure to attend scheduled § 341 meetings, and their failure to make plan payments in the past is evidence of their bad faith in filing the instant case. The Trustee urges the Court to dismiss this case under 11 U.S.C. § 1307(c)(5).[4]

---

3. The remedies for the Debtors' allegations of false statements and perjury in the state court proceedings are in that court system and the appellate process for orders entered there, which the Debtors contend are erroneous for a plethora of reasons. Final rulings in the state court cannot be collaterally attacked or appealed in the bankruptcy court. These rulings are entitled to full faith and credit as a matter of law. *See* 28 U.S.C. § 1738. In addition, the *Rooker–Feldman* doctrine makes it clear that the decisions of state courts in civil litigation may not be reviewed by the lower federal courts. *See Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923); *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983); *Levin v. Attorney Registration and Disciplinary Comm'n of the Supreme Court of Illinois,* 74 F.3d 763 (7th Cir.1996) ("The *Rooker–Feldman* doctrine dictates that federal courts lack jurisdiction to review decisions of state courts."). "Inferior federal judges lack jurisdiction to review the judgments of state courts, which are open to question, if at all, only in the Supreme Court of the United States under 28 U.S.C. § 1257." *Homola v. McNamara,* 59 F.3d 647, 650 (7th Cir.1995).

4. The Trustee incorrectly states in his motion that as of February 28, 1996, the Debtors have not filed a plan and accompanying schedules. In fact, however, the Debtors filed a plan on February 9, 1996, as well as the requisite schedules and a statement of financial affairs.

Section 1307(c)(5) allows the Court to dismiss a Chapter 13 case for cause, including denial of confirmation of a plan under 11 U.S.C. § 1325 and denial of a request made for additional time for filing another plan or modification of a plan. *See* 11 U.S.C. § 1307(c)(5). As previously noted, the Debtors did file a plan. Moreover, the Court has not yet held a confirmation hearing under § 1325, and hence, did not deny confirmation of this plan. Consequently, the Trustee's reliance on § 1307(c)(5) as a means of dismissing the case is misplaced. Instead, the Court could dismiss the case pursuant to § 1307(c) for "cause." Lack of good faith in filing a bankruptcy case constitutes "cause" under § 1307(c) to dismiss a case. *See In re Love,* 957 F.2d 1350, 1354 (7th Cir.1992); *Eisen v. Curry (In re Eisen),* 14 F.3d 469, 470 (9th Cir.1994); *Gier v. Farmers State Bank of Lucas, Kansas (In re Gier),* 986 F.2d 1326, 1329 (10th Cir.1993); *In re Klevorn,* 181 B.R. 8, 10 (Bankr.N.D.N.Y.1995).

 The Trustee has the burden of proof on a challenge to the Debtors' good faith in filing. *See* 11 U.S.C. § 1307(c); *In re Love,* 957 F.2d 1350 (7th Cir.1992). In the Seventh Circuit, bankruptcy courts must look at the totality of the circumstances, including several factors when determining if a Chapter 13 petition was filed in good faith: (1) the nature of the proceedings; (2) the timing of the petition; (3) how the debt arose; (4) the debtor's motive in filing the petition; (5) how the debtor's actions affected creditors; (6) the debtor's treatment of creditors both before and after the petition was filed; and (7) whether the debtor was forthcoming with the bankruptcy court and the creditors. *See Love,* 957 F.2d at 1357. *Love* stated that the focus of the good faith inquiry is often whether the filing is fundamentally fair to the creditors, and whether it complies with the spirit of the Bankruptcy Code's provisions. *Id.*

 There are no express statutory prohibitions against the filing of successive or serial Chapter 13 petitions. *See Johnson v. Home State Bank,* 501 U.S. 78, 87–88, 111 S.Ct. 2150, 2155–56, 115 L.Ed.2d 66 (1991). The Court has previously dealt with debtors who engage in multiple filings for the sole purpose of impeding the legitimate rights of creditors. *See generally In re Standfield,* 152 B.R. 528 (Bankr.N.D.Ill.1993). The main effect of a serial filing is to achieve a continuing reimposition of the automatic stay, with attendant delay in the exercise of creditors' rights and remedies. *In re McKissie,* 103 B.R. 189, 191 (Bankr.N.D.Ill.1989). The filing of successive or serial Chapter 13 petitions does not constitute lack of good faith per se, but it may be evidence of the lack of good faith. *See Tsafaroff v. Taylor (In re Taylor),* 884 F.2d 478, 485 (9th Cir.1989) ("[S]uccessive filings may be evidence of bad faith. . . ."); *Downey Sav. & Loan Ass'n v. Metz (In re Metz),* 820 F.2d 1495, 1497 (9th Cir.1987) (While successive filings are not necessarily in bad faith per se, "successive filings may be examined together and the result achieved by such filings reviewed against the statutory requirements."); *Nash v. Kester (In re Nash),* 765 F.2d 1410, 1414–15 (9th Cir.1985) (debtors may file successive Chapter 13 plans as long as each new plan is proposed in good faith); *Neufeld v. Freeman,* 794 F.2d 149, 153 (4th Cir.1986) (successive filings can be evidence of bad faith); *In re Earl,* 140 B.R. 728, 736 (Bankr.N.D.Ind.1992) (same); *In re Dami,* 172 B.R. 6, 10 (Bankr. E.D.Pa.1994) (a debtor's history of filings and dismissals is probative of bad faith); *McKissie,* 103 B.R. at 191 (the filing of a second or serial case is not per se bad faith). Unfortunately, there is no bright line test or clear point of demarcation beyond which, after a certain period of time or number of failed attempts at reorganization, further serial or sequential filings by debtors cross over from good faith attempts to properly utilize the Bankruptcy Code to bad faith filings to abuse it and creditors.

 In the context of a serial or successive filing, a bona fide change in circumstances may justify finding that a successive filing was proper. *Metz,* 820 F.2d at 1498; *Johnson v. Vanguard Holding Corp. (In re Johnson),* 708 F.2d 865, 868 (2d Cir.1983); *Mortgage Mart, Inc. v. Rechnitzer (In re Chisum),* 847 F.2d 597, 600 (9th Cir.), *cert. denied,* 488 U.S. 892, 109 S.Ct. 228, 102 L.Ed.2d 218 (1988); *Earl,* 140 B.R. at 738; *McKissie,* 103 B.R. at 192. " '[C]hanged circumstances' required to justify a successive filing must be positive changes, i.e., debtor's objective, financial circumstances and ability to perform the plan proposed must have improved between dismissal of the prior case and commencement of the new case." *In re Huerta,* 137 B.R. 356, 368 (Bankr.C.D.Cal. 1992) (collecting cases). It is, however, a misuse of the bankruptcy process to file one case, then, failing to achieve the intended goals, to file a second case. *In re Jackson,* 91 B.R. 473, 474 (Bankr.N.D.Ill.1988). As *Jackson* trenchantly noted, "good faith is not synonymous with honesty, and bad faith is not synonymous with dishonesty." *Id.* at 475.

 "Filing a bankruptcy petition to prevent foreclosure if undertaken pursuant to a legitimate effort at reorganization is not reprehensible and is in accord with the aim of the Bankruptcy Code." *Chisum,* 847 F.2d at 598–99 (citation omitted). However, when a case has been filed only for the purpose of

inhibiting or forestalling a foreclosure action on the debtor's assets without the intention of financial rehabilitation, the case should be dismissed as having been filed in bad faith. *See McKissie,* 103 B.R. at 192; *Earl,* 140 B.R. at 739–40; *see also Dami,* 172 B.R. at 10 ("Where the purpose of the bankruptcy filing is to defeat state court litigation without a reorganization purpose, bad faith exists."); *In re Eatman,* 182 B.R. 386, 392 (Bankr.S.D.N.Y.1995) (Serial filings can be evidence of bad faith, as are petitions filed to forestall creditors.).

■ In this matter, the Court will take into consideration the record not only in this case, but the records in the three previous bankruptcy cases in applying the "totality of circumstances test" to determine whether the Debtors' instant case was filed in good faith. This is the fourth Chapter 13 case filed by the Debtors over a period from May 18, 1995 to January 25, 1996—only slightly over eight months. Based on the totality of the circumstances, the Court holds that this Chapter 13 case was filed in bad faith. The Debtors offered no evidence nor even argued a material change in circumstances to justify the filing of this case within a week of the dismissal of the third case. The subject debts to Miller were incurred long ago prepetition. The instant case was filed to forestall the foreclosure action on the Cicero Property, prevent the Debtors' eviction proceeding from the Hinsdale Property, and avoid an inspection of the Cicero Property by the Town of Cicero via a new automatic stay issuing in this fourth case. The actions taken by the Debtors were done to blatantly delay the Town of Cicero's and Miller's exercise of their state court remedies. The apparent motive of the Debtors in filing this fourth case and the obvious effect, regardless of their intent over the past eight months, is to prevent Miller from operating the Cicero Property as mortgagee in possession and from completing the pending foreclosure action, as well as to prevent the Town of Cicero from inspecting the Cicero Property so as to determine whether it complies with building codes. The Court will not condone this blatant abuse of the Bankruptcy Code. The Debtors filed this case as a subterfuge to prevent Miller and the Town of Cicero from

exercising their rights. "[T]his is the precise type of bankruptcy recidivism that mocks the bankruptcy system. There can be no question that [the Debtors'] conduct is a flagrant abuse of the automatic stay ... interposed for the sole purpose of harassment and delay and intended to cause [Miller and the Town of Cicero] great cost and expense." *Dami,* 172 B.R. at 11. Accordingly, the Court concludes under the totality of the circumstances that the case at bar was not filed in good faith.

■ The Trustee seeks dismissal of the case with a bar from refiling pursuant to § 109(g)(1), which provides in pertinent part:

(g) Notwithstanding any other provision of this section, no individual ... may be a debtor under this title who has been a debtor in a case pending under this title at any time in the preceding 180 days if—

(1) the case was dismissed by the court for willful failure of the debtor to abide by orders of the court, or to appear before the court in proper prosecution of the case.

11 U.S.C. § 109(g)(1). Because the effect of § 109(g) is to deprive a debtor of the right to relief under the Bankruptcy Code for 180 days, "[t]he denial of eligibility should not be lightly or routinely imposed on the debtor without evidence that the debtor knowingly and intentionally disobeyed an order of court or knowingly and intentionally failed to appear in prosecution of the case." *In re Surace,* 52 B.R. 868, 871 (Bankr.C.D.Cal.1985). A party moving for dismissal under § 109(g)(1) has the burden of introducing evidence to support its averment. *In re Key,* 58 B.R. 59, 60 (Bankr.E.D.Pa.1986).

■ Section 109(g) prohibits refiling by a debtor who has "willfully" failed to abide by orders of the court or to appear before the court to prosecute the case. The Bankruptcy Code, however, fails to define willful. "Willful" in this provision means deliberate. *In re King,* 126 B.R. 777, 780 (Bankr.N.D.Ill.1991) (citations omitted); *accord In re Pappalardo,* 109 B.R. 622, 625 (Bankr.S.D.N.Y.1990) (" 'willful' for § 109(g)(1) purposes means deliberate or intentional rather than accidental or beyond the debtor's control"). The court

in *In re Nelkovski,* 46 B.R. 542 (Bankr. N.D.Ill.1985) stated in regard to the definition of "willful":

> Although the definition of willful has been frequently discussed, at the least, the term means "deliberate".... [A] mere failure to make a payment under a Chapter 13 plan or failure to appear at the first meeting or a court hearing, will not, in itself, be sufficient to sustain a finding of willful conduct under this subsection.

> On the other hand, the court will construe repeated failure to appear or lack of diligence as willful conduct. Repeated conduct strengthens the inference that the conduct was deliberate. Additionally, the court will infer from a pattern of dismissals and refilings in unchanged circumstances willful failure to abide by orders of the court and an abuse of the bankruptcy process which this amendment was designed to prevent.

46 B.R. at 544 (citations omitted). In dismissing the debtors' petition, the *Nelkovski* court emphasized the repeated nature of the debtors' failures in previous cases, most pertinent in the matter at bar. *Id.* at 545.

 Section 109(g)(1) does not require a debtor to come physically before the bankruptcy court when the case is set. *King,* 126 B.R. at 780. Willful failure "to appear before the court in proper prosecution of the case" can also include a Chapter 13 debtor's willful failure to pay under the plan, *In re Patel,* 48 B.R. 418, 419 (Bankr. M.D.Ala.1985), and repeated failure to appear at § 341 meetings. *In re Correa,* 58 B.R. 88, 90–91 (Bankr.N.D.Ill.1986) (failure to attend three § 341 creditors' meetings, failure to produce financial information, and failure to disclose foreclosure proceeding constituted willful failure to abide by orders of court). In short, the § 109(g)(1) language "willful failure of the debtor ... to appear before the court in proper prosecution of the case"

> includes willful and deliberate failure of debtors to perform their duties, whether in Chapter 11 to file schedules and Statement of Affairs, or in Chapter 13 to make Plan payments to the Trustee, or in any case to attend statutory meetings of creditors. The provision would not be the meaningful tool intended by Congress if "appear before the court" meant they could thumb their noses at their duties so long as they come into court on dates set.

*King,* 126 B.R. at 781.

The Court holds that the Debtors' repeated conduct of failing to appear at the § 341 creditors' meetings, their repeated failure to make payments under the previous plans, and the refilings in unchanged circumstances constitute willful failure to abide by orders of the Court and is an abuse of the bankruptcy process. This conduct suggests a pattern of repeated failures which the Court can construe as willful conduct and a failure to appear before the Court in proper prosecution of the case. Accordingly, the Court hereby dismisses the instant serial Chapter 13 case under § 109(g)(1). *See generally Standfield,* 152 B.R. at 539 (dismissal with prejudice to any future filings for 180 days can serve as effective deterrent to debtors).

 In addition, pursuant to 11 U.S.C. § 349(a), the Court has the discretion to dismiss the case with prejudice. Section 349(a) provides:

> Unless the court, for cause, orders otherwise, the dismissal of a case under this title does not bar the discharge, in a later case under this title, of debts that were dischargeable in the case dismissed; nor does the dismissal of a case under this title prejudice the debtor with regard to the filing of a subsequent petition under this title, except as provided in section 109(g) of this title.

11 U.S.C. § 349(a). Though sparse, the legislative history clearly shows this provision was added to provide courts with greater authority to control abusive, multiple filings. S.Rep. No. 98–65, 98th Cong., 1st Sess. 74 (1983). As Judge DeGunther aptly noted in *In re Lerch,* 85 B.R. 491, 494 n. 2 (Bankr.

N.D.Ill.1988), *aff'd, Lerch v. Federal Land Bank of St. Louis,* 94 B.R. 998 (N.D.Ill.1989), § 109(g)(1) only touches the tip of the "abuseberg." In the decision affirming *Lerch,* Judge Roszkowski found that § 349(a) clearly affords a bankruptcy court the discretionary power to determine whether there is "cause" for a dismissal with prejudice. 94 B.R. at 1002. Further, the bankruptcy court can use its own factors to determine what may constitute "cause." *Id.* The *Lerch* case permits the Court, in its discretion, to prohibit the filing of any bankruptcy case beyond the limits of § 109(g). *See also In re Dilley,* 125 B.R. 189, 197–98 (Bankr.N.D.Ohio 1991); *Shearson Lehman Hutton Mortgage Corp. v. Hundley (In re Hundley),* 103 B.R. 768, 771 (Bankr.E.D.Va.1989); *cf. Earl,* 140 B.R. at 741 (court utilized its equitable powers under § 105 to enjoin the debtor from filing another Chapter 13 case for six months).

The Court holds that the circumstances surrounding the filing of this fourth case less than one week after dismissal of the third case mandate a dismissal of this serial case with prejudice. The Debtors' failure to attend the § 341 meetings, their failure to tender payments under their plans, and their abuse of the bankruptcy process all constitute "cause" sufficient to warrant a dismissal of the case at bar with prejudice. Hence, the instant case is dismissed with prejudice and the Debtors are prohibited from filing another bankruptcy case in any chapter for a period of one year from the date this Opinion and Order are docketed.

## C. *Anthony Herrera's Unauthorized Practice of Law*

■ One additional point bears discussion—Miller's assertion under 11 U.S.C. § 110 about Anthony's actions as a bankruptcy petition preparer. The subject motion by the Debtors is brought on behalf of both Anthony and Angeline by "Anthony L Herrera & Associates, PC Bankruptcy Petition Preparer." The Debtors were representing themselves pro se in filing the petition. Subsequent pleadings, after the filing of the peti-

tion and schedules, however, are signed only by Anthony as a bankruptcy petition preparer. Miller argues that to the extent Anthony filed the subject motion on behalf of Angeline, he is practicing law without a license. In the alternative, Miller suggests that Angeline has failed to comply with Federal Rule of Bankruptcy Procedure 9011 because she has not signed the papers filed on her behalf. Because Angeline has not signed those pleadings herself and does not have an attorney representing her, the Court can strike the pleadings as to Angeline for her failure to sign as required by Bankruptcy Rule 9011.

■ Anthony Herrera and his professional corporation now claim to be a "bankruptcy petition preparer," and thus, § 110 sanctions are potentially applicable to him and his corporation. Section 110 of the Bankruptcy Code provides for penalties against persons who negligently or fraudulently prepare bankruptcy petitions. This new statutory provision does not preempt, but instead supplements, prior bankruptcy remedies. *See Ross v. Smith (In re Gavin),* 181 B.R. 814, 821 (Bankr.E.D.Pa.1995) ("It seems clear that 11 U.S.C. § 110 was not enacted to preempt these traditional bankruptcy court remedies, but to reinforce their propriety and add some very specific weapons to the bankruptcy court's arsenal in remedying certain specific inappropriate conduct by lay advocates."), *adopted,* 184 B.R. 670 (E.D.Pa.1995). Section 110, however, only covers a "bankruptcy petition preparer." A "bankruptcy petition preparer" is defined as "a person, other than an attorney or an employee of an attorney, who prepares for compensation a document for filing." 11 U.S.C. § 110(a)(1). "Document for filing" is defined as "a petition or any other document prepared for filing by a debtor in a United States bankruptcy court or a United States district court in connection with a case under this title." 11 U.S.C. § 110(a)(2).

In the matter at hand, there is no evidence whether Anthony or his corporation received compensation from Angeline. Accordingly, the penalties for persons who negligently or

fraudulently prepare bankruptcy petitions and other documents filed in a bankruptcy case are inapposite.

Most pertinent, however, is § 110(k) which provides:

> Nothing in this section shall be construed to permit activities that are otherwise prohibited by law, including rules and laws that prohibit the unauthorized practice of law.

11 U.S.C. § 110(k). While Anthony certainly has the right to represent himself for his own interests, he and his professional corporation acting as a "bankruptcy petition preparer" have crossed the line by purporting to represent Angeline. This violates the prohibition of § 110(k).

 Furthermore, the actions of Anthony or his corporation on behalf of Angeline as her attorney in fact constitute the unauthorized practice of law which is prohibited in Illinois. In determining whether one has engaged in the unauthorized practice of law, bankruptcy courts look to state law. *See In re Skobinsky,* 167 B.R. 45, 49 (E.D.Pa. 1994); *Foulston v. Jones (In re Robinson),* 162 B.R. 319, 325 (Bankr.D.Kan.1993); *In re Bachmann,* 113 B.R. 769, 772 (Bankr. S.D.Fla.1990); *see also In re Chas. A. Stevens & Co.,* 108 B.R. 191, 193 (Bankr.N.D.Ill. 1989). Preparation of pleadings and court appearances and arguments thereon are part and parcel of the practice of law. Illinois courts have held that the practice of law is not limited to court appearances, but also includes services rendered out of court. *People v. Peters,* 10 Ill.2d 577, 581–82, 141 N.E.2d 9 (1957). The Illinois Supreme Court has defined the practice of law as constituting "the preparation of pleadings, and other papers incident to actions and special proceedings, and the management of such actions and proceedings on behalf of clients before judges and courts, and, in addition, conveyancing, the preparation of legal instruments of all kinds, and, in general, all advice to clients, and all action taken for them in matters connected with the law." *People ex rel. Courtney v. Association of Real Estate*

*Taxpayers of Illinois,* 354 Ill. 102, 109–10, 187 N.E. 823 (1933).

Any person having an interest in a legal mater is entitled to appear in his *own* behalf (or pro se) and protect only his interests so long as he proceeds in accord with the rules of practice and procedure. *Biggs v. Plebanek,* 343 Ill.App. 466, 99 N.E.2d 363 (1951), *appeal transferred,* 407 Ill. 562, 95 N.E.2d 870 (1950), *cert. denied,* 343 U.S. 912, 72 S.Ct. 647, 96 L.Ed. 1328 (1952) (emphasis supplied). This does not allow a non-lawyer the privilege of acting as a lawyer for anyone else, even a spouse. The Court holds that when Anthony or his professional corporation prepared, signed, filed, and argued papers on behalf of Angeline, that constituted the unauthorized practice of law, and was more than merely providing typing or document production services to her. Any such further activities will require the Court to make the appropriate referrals to the appropriate authorities for further action. *See* 705 ILCS 205/1. The Court strongly cautions Anthony Herrera against continuing to engage in the unauthorized practice of law.

## IV. CONCLUSION

For the foregoing reasons, the Court hereby grants the motion of the Trustee and dismisses this Chapter 13 case pursuant to § 109(g)(1). In addition, the instant case is dismissed with prejudice and the Debtors are prohibited from filing another bankruptcy case for a period of one year hereafter pursuant to § 349(a). The Court denies the motion of the Debtors and holds that the Town of Cicero's actions are excepted from the automatic stay pursuant to § 362(b)(4). Moreover, there is no evidence to support a finding that Miller or Flynn violated the automatic stay. Also, the Court denies the Debtors' request for a default judgment against Miller and Flynn. Further, the Court finds that Anthony Herrera has engaged in the unauthorized practice of law on behalf of his wife, Angeline Herrera.

This Opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy

Procedure 7052. A separate order shall be entered pursuant to Federal Rule of Bankruptcy Procedure 9021.

### *ORDER*

For the reasons set forth in a Memorandum Opinion dated the 28th day of March, 1996, the Court hereby grants the motion of Jack McCullough, the Chapter 13 Standing Trustee, and dismisses this Chapter 13 case pursuant to 11 U.S.C. § 109(g)(1). In addition, the case is dismissed with prejudice pursuant to 11 U.S.C. § 349(a) and the Debtors are prohibited from filing another bankruptcy case under any chapter for a period of one year from the entry of this Opinion and Order on the docket. The Court denies the motion of the Debtors for a finding of a willful violation of the automatic stay under 11 U.S.C. § 362(a) against the Town of Cicero, Illinois, William M. Miller, and his attorney Michael Flynn, and declines to award actual and punitive damages, costs, and attorneys' fees pursuant to 11 U.S.C. § 362(h). The Court holds that the Town of Cicero's actions are excepted from the automatic stay pursuant to 11 U.S.C. § 362(b)(4). The Court also denies the Debtors' request for a default judgment against William M. Miller and Michael Flynn. Further, the Court finds that Anthony Herrera has engaged in the unauthorized practice of law by preparing, filing, signing, and arguing various pleadings on behalf of his wife, Angeline Herrera contrary to 11 U.S.C. § 110(k). The Court strongly cautions Anthony Herrera against continuing to engage in this activity for her or anyone else.