CUDAHY, Circuit Judge:
The debtor, C-TC 9th Avenue Partnership (C-TC), appeals the determination, made in the first instance by the bankruptcy court, that C-TC is not a “person” eligible for Chapter 11 relief, and that C-TC filed its Chapter 11 petition in bad faith. C-TC’s petition was dismissed by the bankruptcy court, whose decision was affirmed by the district court. We affirm.
I. Factual Background
C-TC, a general partnership under New York law, was formed in 1988 by Richard Cabral and the Timmons Corporation. The purpose of the partnership was to purchase and manage the Cloverleaf Distribution Center (Cloverleaf), a 21-acre plot of open land containing warehouses. C-TC’s purchase agreement with Norton Company (Norton), the then-owner of Cloverleaf, included pay *1307 ment of a $110,000 fee to compensate Norton for canceling a prior purchase agreement. The purchase price itself required a $25,000 cash payment upon signing, another $850,000 in cash at closing and a $2,850,000 note secured by a mortgage on the property. The agreement also included a sale-leaseback provision whereby Norton leased and occupied approximately half of the property after the sale.
Prior to closing the sale, Norton executed at C-TC’s request an environmental indemnification agreement in which Norton agreed to indemnify C-TC for “any discharges to [Cloverleaf] of hazardous wastes or substances within the meaning of the Comprehensive Environmental Response Compensation and Liability Act of 1980____”
For various reasons, C-TC failed to make any of its required payments. In November, 1988, Norton brought two actions against CTC. The first alleged that C-TC breached the obligation of the note by failing to make the required cash payments, and the second sought foreclosure of the mortgage on the property because of C-TC’s breach of its obligations under the long-term note and mortgage. C-TC counterclaimed in the foreclosure action alleging breach of the purchase agreement and fraud. C-TC claimed that the property was not in compliance with applicable zoning and environmental regulations and that Norton had purposely defrauded C-TC by selling the property to it in such a condition. The parties dispute whether there has been any actual environmental damage to the land or any pollution.[1] In any event, a New York state court severed Norton’s foreclosure action from C-TC’s counterclaims, and held that $4 million was the maximum C-TC could recover from Norton. The state court also required Norton to post bond in that amount, which it did. In addition, the New York court appointed a referee and orally granted Norton’s motion to appoint a receiver. On the same day that the court approved the appointment of a receiver, C-TC filed its voluntary Chapter 11 petition in bankruptcy court. This filing automatically stayed the foreclosure action in state court.
Norton sought relief from the automatic stay. These proceedings resulted in the dismissal of C-TC’s petition on the grounds that C-TC was ineligible to proceed under Chapter 11 and that C-TC had filed in bad faith. The district court affirmed and C-TC again appealed.
II. C-TC’s Eligibility under Chapter 11
When C-TC filed its voluntary Chapter 11 petition in bankruptcy court, it listed itself as having only one partner, Timmons Corporation, thereby indicating that Richard Cabral had withdrawn from the partnership. Cabral’s withdrawal, and the forced dissolution of the partnership which it precipitated, has become the central issue of the litigation. The bankruptcy court dismissed C-TC’s petition as a matter of law for the reason that CTC, as a dissolved partnership, was not eligible for reorganization and could not implement a Chapter 11 reorganization. As the bankruptcy court held, 11 U.S.C. § 109(d) places some limitations on the categories of entities eligible for Chapter 11 reorganization. This statute provides that “[o]nly a person that may be a debtor under chapter 7 ... may be a debtor under chapter 11 of this title.”
The bankruptcy court determined that the threshold issue was thus whether CTC, as a partnership in dissolution, was a “person” within the meaning of the bankruptcy code. The definition of a partnership, which is not defined in the bankruptcy code, is a matter of nonbankruptcy law. See Chicago Title & Trust Co. v. 4136 Wilcox Bldg. Corp., 302 U.S. 120, 128-29, 58 S.Ct. 125, 128-29, 82 L.Ed. 147 (1937). In New York a partnership is composed of two or more persons acting as partners. Thus, under New York law, the withdrawal of Richard Cabral, *1308 one of C-TC’s two partners, dissolved the partnership. But a dissolved partnership is allowed to “continue[ ] until the winding up of the partnership affairs is completed.” N.Y. Partnership Law § 61 (McKinney 1996). This raises the question of the meaning of “continue.” In Pastor v. State Tax Comm’n, 115 A.D.2d 144, 146, 495 N.Y.S.2d 515 (N.Y.App.Div.1985), the Appellate Division held that § 61 of the New York Partnership Law operates not to “prolong the life of an otherwise unviable entity” but only to allow continuation of the partners’ liability for debts of the partnership. Based on this interpretation, the bankruptcy court found that “the Debtor’s restricted capacity as a partnership in dissolution under New York law is inconsistent with the Debtor’s stated objective in Chapter 11 of obtaining a ‘fresh start.’ ”
C-TC contends that the bankruptcy court disregarded the Supreme Court’s insistence that the plain meaning of the Bankruptcy Code be given effect. See Toibb v. Radloff, 501 U.S. 157, 161, 111 S.Ct. 2197, 2199, 115 L.Ed.2d 145 (1991).[2] Instead, C-TC argues that the bankruptcy court, relying on In re Fitzgerald Group, 38 B.R. 16 (Bankr. S.D.N.Y.1983), proposed an additional requirement for eligibility under Chapter 11, namely, that the debtor “intend to reorganize.” C-TC further argues that the “dissolution” of a partnership is distinguishable from its “termination” in that a partnership in dissolution is still a “person” for purposes of Chapter 11.
Norton, on the other hand, supports the bankruptcy court’s reasoning. While Norton concedes that a partnership is an eligible person, Norton emphasizes that under New York law a partnership “is an association of two or more persons to carry on as co-owners a business for profit.” N.Y. Partnership Law § 10(1) (McKinney 1996). Further, the argument goes, before C-TC filed its bankruptey petition, one of its two partners had already withdrawn, thereby destroying the partnership. Thus, since the bankruptcy code considers “partnerships” but not “partnerships in dissolution” to be eligible as “persons,” C-TC is not a “person” and is not eligible. Norton agrees with the bankruptcy court’s conclusion that C-TC’s petition is inconsistent with the objectives of Chapter 11. In this connection, the Sixth Circuit has held that without a viable business to rehabilitate, Chapter 11 loses its purpose. In re Winshall Settlor’s Trust, 758 F.2d 1136, 1137 (6th Cir.1985).
If the primary purpose of Chapter 11 is to enable businesses to reorganize and emerge from bankruptcy as operating enterprises, and New York partnership law prohibits CTC from engaging in any business other than liquidation, Chapter 11 reorganization is not available as a course for C-TC to follow. A somewhat analogous case applying New York law, In re Fitzgerald Group, held that
the underlying purpose of Chapter 11 ... is to rehabilitate the debtor and offer a fresh start. The debtor in this ease is a partnership that has been dissolved by the death of a partner. There can be no opportunity to rehabilitate an entity that, by law, no longer exists except for the purposes of liquidation. This debtor seeks relief under Chapter 11, a reorganization chapter, when there is nothing which can be reorganized.
38 B.R. at 18. C-TC has pointed out that the only asset involved in In re Fitzgerald was a typewriter (worth $2500) and that this was reason enough to deny a Chapter 11 petition. However, the bankruptcy court did not rely in its decision on the limited assets involved, but rather on the status of the debtor (i.e., as a partnership in dissolution).
The importance under New York law of dissolution as it affects a partnership can be *1309 appreciated when one compares the effect of dissolution on a partnership with the effect of dissolution on a corporation. In Cedar Tide Corp. v. Chandler’s Cove Inn, Ltd. (In re Cedar Tide Corp.), 859 F.2d 1127, 1128 (2d Cir.1988), this circuit examined the question “whether the federal courts have jurisdiction over a Chapter 11 petition filed by a corporation previously dissolved by New York State for nonpayment of franchise taxes.” We held there that, while § 1006(a) of New York Business Corporation Law, (McKinney 1996), limited a dissolved corporation to those activities involved in the winding up of its affairs, the New York Tax Law, § 203-a(7) (McKinney 1996), allowed a dissolved corporation to be reinstated nunc pro tunc upon the filing of a certificate indicating that all taxes, penalties, interest and fees had been paid. In re Cedar Tide, 859 F.2d at 1132. The easy reinstatement allowed a New York corporation is not available to a New York partnership. Upon dissolution, the partnership is relieved of its responsibilities, duties and powers except for completing transactions unfinished at dissolution. N.Y. Partnership Law § 66(l)(a) (McKinney 1996). Thus, while a New York corporation in dissolution is entitled to proceed under Chapter 11 since reorganization is possible, a New York partnership in dissolution is not. Such an entity cannot reorganize. See also In re Fitzgerald Group, 38 B.R. at 18 (holding that “[tjhere can be no opportunity to rehabilitate an entity that, by law, no longer exists except for the purposes of liquidation.”). We therefore conclude that a partnership in dissolution is not a “person” eligible to avail itself of reorganization in Chapter 11.
C-TC also argues that, even if reorganization is barred, Chapter 11 expressly allows liquidation. Norton contends that this argument has been waived since C-TC failed to raise it in the district court. In fact, Norton points out that C-TC consistently insisted below that its intention was to reorganize. We believe, therefore, that there has been a waiver. In any event, while a debtor may conclude Chapter 11 proceedings by liquidating and may even enter them with an intent to liquidate if necessary, there is no reason a debtor should be permitted to enter these proceedings without a possibility of reorganization. C-TC has not claimed that there was (or is) any possibility of reorganization here. Hence, although the issue is waived, we believe that it is, in any event, without merit.
III. Bad Faith
After deciding that C-TC was ineligible for reorganization, the bankruptcy court also held that C-TC had filed its Chapter 11 bankruptcy petition in bad faith, and alternatively dismissed it on that ground as well. Bankruptcy Judge Stosberg, the first of the three bankruptcy judges to entertain this case, reserved decision on Norton’s motion to dismiss (which was based both on ineligibility and bad faith) while other matters, not relevant here, were being decided. Bankruptcy Judge Edmonds, who succeeded Judge Stosberg, again declined to address the merits of Norton’s motion to dismiss, choosing instead to set the issue for determination by Bankruptcy Judge Littlefield. Judge Littlefield granted Norton’s motion on two grounds. First, he held — along the lines that we have discussed — that as a dissolved partnership C-TC could not, as a matter of law, proceed with a Chapter 11 reorganization plan because, as a dissolved partnership, it was not eligible for reorganization. Second, he found that the circumstances surrounding C-TC’s filing indicated a lack of good faith on its part. These circumstances included the fact that C-TC was obviously foreclosed from reorganizing from the date that it filed its petition. In addition, the bankruptcy court found that the “primary characteristic of the Debtor’s Chapter 11 case is its longstanding dispute with Norton” and, thus, that the primary function of the petition was to serve as a litigation tactic. This issue of lack of good faith was not addressed by the district court, but we think it appropriate to do so here.
Because “a Chapter 11 filing ‘may be deemed frivolous if it is clear that on the filing date there was no reasonable likelihood that the debtor intended to reorganize and no reasonable probability that it would eventually emerge from bankruptcy proceedings,’ ” the bankruptcy court held that C-TC had filed in bad faith. 193 B.R. 650, 654(quoting Baker v. Latham Sparrowbush *1310 Assoc. (In re Cohoes Indus. Terminal, Inc.), 931 F.2d 222, 227 (2d Cir.1991)). The bankruptcy court found that the dispute between C-TC and Norton could be fully resolved in a non-bankruptcy forum. It also found that Norton’s stated opposition to any reorganization plan created an almost insurmountable barrier to the confirmation of any such plan and that C-TC had obtained an automatic stay of the state court proceeding when it filed its petition.[3] However, C-TC had let thirteen months elapse after its filing, during which it continued to operate normally while failing to file a Chapter 11 plan or disclosure statement. Id. at 654.
A. Merits of the Bad Faith Claim
When it is clear that, from the date of filing, the debtor has no reasonable probability of emerging from the bankruptcy proceedings and no realistic chance of reorganizing, then the Chapter 11 petition may be frivolous. In re Cohoes Indus. Terminal, Inc., 931 F.2d at 227. Further, “an entity may not file a petition for reorganization which is solely designed to attack a judgment collaterally — the debtor must have some intention of reorganizing.” Id. at 228. For example, in In re Wally Findlay Galleries (New York), Inc., 36 B.R. 849, 850 (Bankr. S.D.N.Y.1984), the bankruptcy court dismissed a Chapter 11 case as a bad faith filing after finding that the “petition was filed the same day that judgments on [certain] ... promissory notes were entered in the state court.” Finding that the “debtor filed its petition herein to avoid the consequences of adverse state court decisions while it continues litigating,” and that the “debtor is unable to propose a meaningful plan of reorganization until its litigation ... is resolved,” id. at 851, the bankruptcy court then found it “evident that the debtor seeks to use this court not to reorganize, but to relitigate. This is an impermissible use of Chapter 11____” Id.
The good faith standard applied to bankruptcy petitions “furthers the balancing process between the interests of debtors and creditors which characterizes so many provisions of the bankruptcy laws and is necessary to legitimize the delay and costs imposed upon parties to a bankruptcy.” Little Creek Dev. Co. v. Commonwealth Mortgage Corp. (In re Little Creek Dev. Co.), 779 F.2d 1068, 1071 (5th Cir.1986). Further,
[t]he purpose of Chapter 11 reorganization is to assist financially distressed business enterprises by providing them with breathing space in which to return to a viable state. “[I]f there is not a potentially viable business in place worthy of protection and rehabilitation, the Chapter 11 effort has lost its raison d’etre____”
In re Winshall Settlor’s Trust, 758 F.2d 1136, 1137 (6th Cir.1985). A bankruptcy court may dismiss a bad faith filing on an interested party’s motion or sua sponte. Here, the Chapter 11 filing was made with no hope of reorganization and at the very moment that the state litigation had taken a turn adverse to C-TC, making mortgage foreclosure imminent.
C-TC argues that the bankruptcy court did not follow the factors suggested in the statute for a determination of bad faith. 11 U.S.C. § 1112(b) provides in part that a court:
may dismiss a case under this chapter, ..., for cause, including—
(1) continuing loss to or diminution of the estate and absence of a reasonable likelihood of rehabilitation;
(2) inability to effectuate a plan;
(3) unreasonable delay by the debtor that is prejudicial to creditors; [or]
(4) failure to propose a plan under section 1121 of this title within any time period fixed by the court.[4]
*1311 It is important to note that this list is illustrative, not exhaustive.[5] Even so, the bankruptcy court, contrary to C-TC’s allegations, did in fact address some of the factors listed in the statute. C-TC argues that “[t]he Bankruptcy Court did not rely on any of the enumerated examples contained in section 1112(b)____ [T]here is no evidence of continuing loss or diminution of the estate, ... C-TC has not failed to propose a plan within the time fixed by the Bankruptcy Court, ... [n]or has there been prejudice to creditors.” But the bankruptcy court specifically found that C-TC enjoyed no likelihood of rehabilitation and would be unable to effectuate a plan due to Norton’s opposition. Of course, the bankruptcy court also found rather dis-positively that C-TC was unable to reorganize because it did not qualify as a “person.” There was also a finding that C-TC knew that there was no reasonable probability that it would ever emerge from bankruptcy and yet C-TC chose to file the petition anyway. Further, the bankruptcy court found that CTC’s main purpose in filing its Chapter 11 petition was to stay the state court proceedings and to relitigate in the bankruptcy forum the matters that had been settled in the state court.
In an analogous case, a federal district court in Kentucky sustained a bankruptcy court’s sua sponte dismissal of a Chapter 11 petition for bad faith. The district court said that the dismissal should stand if the bankruptcy court’s factual determinations were not clearly erroneous. Pleasant Pointe Apartments, Ltd. v. Kentucky Hous. Corp., 139 B.R. 828 (W.D.Ky.1992). Pleasant Pointe failed to make any payments on its loan from the Kentucky Housing Corporation (KHC). Id. at 830. KHC instituted state proceedings, including a foreclosure action, against Pleasant Pointe. Id. Pleasant Pointe filed its bankruptcy petition just as its prospects in state court deteriorated and immediately before KHC was set to file a motion for summary judgment. Id. at 833 n. 6. KHC did not specifically request dismissal based on Pleasant Pointe’s bad faith but did ask for “any other relief to which it may appear entitled.” Id. at 832 n. 5. The district court held that this prayer for relief, in combination with the pleadings, was sufficient to raise the issue of bad faith and put Pleasant Pointe on notice. Id. The bankruptcy court in Pleasant Pointe considered the following factors as indicative of a bad faith filing:
(1) the debtor has only one asset;
(2) the debtor has few unsecured creditors whose claims are small in relation to those of the secured creditors;
(3) the debtor’s one asset is the subject of a foreclosure action as a result of arrearages or default on the debt;
(4) the debtor’s financial condition is, in essence, a two party dispute between the debtor and secured creditors which can be resolved in the pending state foreclosure action;
(5) the timing of the debtor’s filing evidences an intent to delay or frustrate the legitimate efforts of the debtor’s secured creditors to enforce their rights;
(6) the debtor has little or no cash flow;
(7) the debtor can’t meet current expenses including the payment of personal property and real estate taxes; and
(8) the debtor has no employees.
Id. at 832; see also Phoenix Piccadilly, Ltd. v. Life Ins. Co. of Virginia (In re Phoenix Piccadilly, Ltd.), 849 F.2d 1393, 1394-95 (11th Cir.1988); Little Creek, 779 F.2d at 1072-73. The presence of the Pleasant Pointe factors was adequate evidence of the debtor’s impermissible purpose in filing. In the case before us, at least the following *1312 factors are present: (1) C-TC’s only asset is Cloverleaf, (2) C-TC has few unsecured creditors and their claims are small in relation to Norton’s, (3) Cloverleaf is the subject of a foreclosure action as a result of a mortgage in default, (4) C-TC’s financial problems involve only a two party dispute with Norton that can be resolved in the pending state court action, (5) the timing of C-TC’s filing evidences an intent to delay and frustrate the legitimate efforts of Norton to enforce its rights, (6) C-TC has not paid its property or other taxes, (7) C-TC has no employees and (8) more than a year has elapsed after filing without further activity. Based on these factors, the bankruptcy court did not abuse its discretion in dismissing C-TC’s petition for bad faith.
B. C-TC’s Procedural Due Process Claims
In addition to its objection on the merits to the bad faith determination, C-TC raises procedural arguments. It contends that it was denied due process of law when the bankruptcy court decided the bad faith issue without a formal hearing. The Bankruptcy Code, 11 U.S.C. § 1112(b), provides for the dismissal of a debtor’s ease for cause “after notice and a hearing.” Judge Little-field decided the bad faith issue at the same time that he considered C-TC’s ineligibility to file under Chapter 11 and did so without first conducting a hearing.
C-TC argues that due process mandates the holding of an evidentiary hearing before bad faith can be determined. But the “notice and hearing” required before a debtor’s case may be dismissed is further defined by the statute as “mean[ing] after such notice as is appropriate under the particular circumstances, and such opportunity for a hearing as is appropriate under the particular circumstances.” 11 U.S.C. § 102(1)(A). These rather nebulous standards must lead to problematic interpretations. However, the case law has been helpful in clarifying the standards.
When the record is sufficiently well developed to allow the bankruptcy court to draw the necessary inferences to dismiss a Chapter 11 case for cause, the bankruptcy court may do so. See, e.g., Oneida Motor Freight, Inc. v. United Jersey Bank, 848 F.2d 414, 416 n. 3 (3d Cir.1988). Here Norton first requested, in its cross-motion to dismiss, that C-TC’s petition be dismissed on grounds of bad faith. C-TC in opposition to this motion filed a memorandum of law, an affidavit and certain other documents. Thus, before the bankruptcy court decided the issue of bad faith, C-TC was presented with notice of the claim and an opportunity to address it.
C-TC’s main argument to discredit Judge Littlefield’s decision on bad faith is based on the fact that the first two bankruptcy judges who earlier oversaw the case believed that the issue of bad faith was premature for determination. As noted, supra, the bad faith issue was put off until Judge Little-field received the case. Judge Littlefield decided not only the eligibility issue but also the bad faith issue. C-TC correctly points out that a determination of bad faith requires a full examination of all the circumstances of the case; it is a highly factual determination but also one that may sweep broadly. See, e.g., Cohoes Indus. Terminal, 931 F.2d at 227; Little Creek, 779 F.2d at 1072.
The bankruptcy court engaged in just such a fact-intensive examination and reached conclusions that are not clearly erroneous.[6] While C-TC argues that the genuine disputes between C-TC and Norton should have given the he to any claim of bad faith, the bankruptcy court examined these disputed matters and found them to be emblematic of a dispute limited to only two parties. For such two-party disputes, the state court, which has been overseeing the case, is a preferable forum.[7]
*1313 C-TC’s last point is that the bankruptcy court misunderstood the nature of C-TC’s claims against Norton and others. C-TC argues that it holds many significant unsecured claims — including tax, environmental and building code-related claims. Norton has rebuffed these contentions by showing that no governmental body has agreed with C-TC’s assessment of environmental damage, in effect tending to show that many of these alleged debts may be nonexistent. In any event, they are adequately secured by the $4,000,000 bond. Thus we find that the bankruptcy court’s election to decide the bad faith issue without a formal evidentiary hearing was within its discretion; the record provided ample evidence on which the court could make such a decision.
IV. Conclusion
C-TC and Norton entered into a sale and lease-back arrangement. C-TC ultimately failed to make any of the payments on the purchase price. This failure led to years of state court and bankruptcy court litigation. Because we find that C-TC, a dissolved New York partnership, is not a “person” for purposes of Chapter 11 and therefore cannot pursue a filing under that Chapter, we affirm the dismissal below. We likewise affirm the dismissal on the alternative ground that CTC filed its Chapter 11 petition in bad faith.
The judgment of the district court is AFFIRMED.

. C-TC concedes, that, despite having notified the United States Environmental Protection Agency, the New York Department of Environmental Conservation and the Town of Colonie, none of those governmental bodies chose to take any action with regard to Cloverleaf. The New York Department of Environmental Conservation wrote C-TC a letter in which it determined that “the data you enclosed does not suggest that there was a consequential amount of hazardous waste deposited at this site.”

. Toibb holds that the language of 11 U.S.C. § 109 plainly establishes that an individual, who is not engaged in an ongoing business, is eligible to file under Chapter 11. Id. at 160-61, 111 S.Ct. at 2199. While at first blush this holding may seem highly relevant to the question before us, Toibb and the present case are quite distinguishable. In Toibb, the Court was determining whether being an ongoing business was a requirement for eligibility for Chapter 11 relief. Here, we are determining what the term "person” encompasses. These are very different questions. Thus, Toibb is helpful, in this case, only for the proposition that the plain language of a statute should control unless the legislative history suggests a clearly expressed legislative intent in opposition to the plain language of the statute. Id. at 162, 111 S.Ct. at 2200.

. C-TC filed its Chapter 11 petition on the day that the state court granted Norton's motion to appoint a receiver.

. The following additional conditions, which are not relevant here, are listed in the statute.
(5)denial of confirmation of every proposed plan and denial of a request made for additional time for filing another plan or modification of a plan;
(6) revocation of an order of confirmation under section 1144 of this title, and denial of confirmation of another plan or a modified plan under section 1129 of this title;
(7) inability to effectuate substantial consummation of a confirmed plan;
*1311 (8) material default by the debtor with respect to a confirmed plan;
(9) termination of a plan by reason of the occurrence of a condition specified in the plan; or
(10) nonpayment of any fees or charges required under chapter 123 of title 28.
11U.S.C. § 1112(b).

. “[T]he list [contained in § 1112(b)] is not exhaustive. The Court will be able to consider other factors as they arise, and to use its equitable powers to reach an appropriate result in individual cases." House Report No. 95-595, 95th Cong., 1st Sess. at 405-6, U.S.Code Cong. & Admin.News 1978, pp. 5787, 6363-64; see also In re Herrera, 194 B.R. 178, 190 (Bankr.N.D.Ill. 1996).

. We review the bankruptcy court’s factual conclusions of bad faith under the clearly erroneous standard. United States Lines (S.A.), Inc. v. United States (In re McLean Indus., Inc.), 30 F.3d 385, 387 (2d Cir.1994).

. C-TC also argues that reorganization is not foreclosed by the fact that Norton has stated its express intention to block any proposed plan of reorganization because C-TC could prevail in its effort to avoid Norton’s liens. Since we have already decided that, as a matter of law, C-TC is *1313 ineligible for reorganization, this argument is moot. Nevertheless, if C-TC were correct, the state court would still be the more appropriate forum, just as the state court is the better forum for resolving most two-party disputes.