**In the Matter of Frank CATALANO, Debtor.**

**Bankruptcy No. BK93–80265.**

United States Bankruptcy Court, D. Nebraska.

Feb. 19, 1993.

Dave Clark, Atty., U.S. Trustee.

Kathleen Laughlin, Chapter 13 Trustee.

*MEMORANDUM*

TIMOTHY J. MAHONEY, Chief Judge.

This memorandum contains finding of fact and conclusions of law required by Fed.Bankr.R. 7052 and Fed.R.Civ.P. 52. This is a core proceeding as defined by 28 U.S.C. § 157(b)(2)(A).

*Background*

This Chapter 13 case was filed on February 17, 1993. The case was apparently filed because the City of Omaha, pursuant to its authority by city ordinance and state law, had entered a condemnation order with regard to a building located on real property allegedly owned by the debtor. Pursuant to the condemnation order, the City had apparently employed contractors to demolish the structure as of February 18, 1993.

The debtor, through counsel, notified the appropriate city officials that a Chapter 13 bankruptcy had been filed and that the automatic stay was effective to prohibit the destruction of the structure. The City, through an assistant city attorney or other official, notified counsel for the debtor on February 17, 1993, that the automatic stay was not applicable because of the regulatory power exception of 11 U.S.C. § 362(b)(4). Therefore, the City intended to proceed with the destruction of the structure as scheduled.

Counsel for the debtor obtained a hearing before the Bankruptcy Court based upon a "Motion for a Temporary Restraining Order" filed February 18, 1993. Hearing began at 9:30 A.M. on February 18 and continued until approximately 3:30 P.M. on that date.

The issues as framed by the parties are:

1. Does the automatic stay of 11 U.S.C. § 362(a) prohibit any further action by the City against the property of the debtor or property of the estate?

2. Does the police power and regulatory power exception of 11 U.S.C. § 362(b)(4) apply, thereby permitting the City to proceed notwithstanding the filing of the bankruptcy petition?

3. If the automatic stay does not apply, should the Court enter a temporary restraining order enjoining the City from demolishing the structure pending a final hearing?

*Facts, Conclusion of Law and Discussion*

### A. Automatic Stay

There is no evidence that the City has violated the state law or city ordinances in proceeding to order condemnation and demolition of the property in question. There is no evidence that the City has deprived the debtor of any right to "due process" by its procedures.

The City notified the debtor in June of 1992 that certain deficiencies in the structure needed to be corrected in order for the property to meet Chapter 43 of the Municipal Code, *Unsafe and Dangerous Buildings.* The letter of notification, Exhibit 1, lists nineteen different items that need to be corrected.

Those items apparently were not corrected and the City notified the debtor that the property was deemed a nuisance and would be demolished by the City. The debtor timely appealed the administrative order to the City Council of the City of Omaha. A hearing was held on September 15, 1992, at which a representative of the debtor, his sister, appeared. After considering arguments made by the debtor through his sister and considering the presentation made by the City officials and considering letters from neighbors and a petition from neighbors, the City Council, by a six to zero vote with one member absent, sustained the condemnation and denied the appeal.

The debtor did not take further appeal to the District Court of Douglas County which is authorized by Section 25–1901 et seq. of the Nebraska Statutes.

The City then proceeded with the demolition project, eventually scheduling the demolition for February 18, 1993. The bankruptcy case was filed February 17, 1993.

The automatic stay of Section 362 of the Bankruptcy Code operates as a stay of, among other things, "the commencement or continuation ... of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title; ... any act to obtain possession of property of the estate or property from the estate or to exercise control over property of the estate...."

In general, the action by the City to demolish the structure would fall under acts prohibited by Section 362(a). However, Section 362(b)(4) provides that the filing of a petition does not operate as a stay

under subsection (a)(1) of this section, of the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power.

◼ A condemnation proceeding by a city to rid the city of a structure deemed unsafe is certainly the exercise of a police or regulatory power by a governmental unit and is thereby excepted from the automatic stay of Section 362(a).

### B. Temporary Restraining Order

◼ The issue then becomes whether the Court should enter a temporary restraining order enjoining the City from proceeding pursuant to its regulatory authority pending a final hearing. Whether a temporary restraining order or a preliminary injunction should issue involves consideration of the following four factors:

1. the threat of irreparable harm to the movant;

2. the state of the balance between this harm and the injury that granting the injunction will inflict on other parties litigant;

3. the probability that movant will succeed on the merits;

4. the public interest.

*Dataphase Systems, Inc., v. C L Systems, Inc.,* 640 F.2d 109, 113 (8th Cir.1981).

The motion for temporary restraining order alleges that the debtor filed a Chapter 13 bankruptcy on February 17, 1993; that the debtor owns a half interest in certain real property which is the subject of the motion; that the City has proceeded to condemn the property and has slated the

property for demolition on February 18, 1993; that debtor is in the process of rehabilitating the property; that debtor was not given sufficient time by the City Council to successfully rehabilitate the property; that demolition would irreparably damage the value of the property; that the property is necessary for conservation of the estate and the economic reorganization of the debtor; that the property has a fair market value in its current condition of $50,000.00; that other than delinquent property taxes in the approximate amount of $11,000.00, there are no other liens or encumbrances on the property; that the property after rehabilitation will have a fair market value conservatively in excess of $80,000.00; that the debtor plans to generate income from the rehabilitated property by renting it or selling it and thereby make payments to the Chapter 13 Trustee and pay off the back taxes; that the debtor is seventy-four years old, suffers from the infirmity of age, and the real property constitutes a major portion of his life's work; that the property is not a nuisance; that the deficiencies of the property can be resolved to the satisfaction of all parties within 180 days; that the debtor claims there is a less restrictive alternative to resolving the City's claims than the destruction of real property; that the City will not be irreparably harmed by delaying destroying property of the bankruptcy estate, but permitting the City to demolish the property would extinguish the major part of the debtor's life savings.

The debtor prays that the Court issue a temporary restraining order to preserve the property of the estate, and to permit the debtor the opportunity to cure deficiencies.

The debtor did not appear at the hearing on the temporary restraining order. Instead, his sister, Joan Troia, appeared and testified. The Court took judicial notice of the Schedule I, Current Income, of individual debtor which was filed on February 17, 1993. That Schedule shows income of the debtor as Social Security in the amount of $330.00 per month. It also shows other monthly income from rental of the subject property and two other properties in the City of Omaha. Such rental is listed at $500.00 per month for the subject property and $350.00 and $250.00 per month for the other properties. The total combined monthly income shown on the schedules including the alleged rental receipts and social security is $1,430.00. No Chapter 13 plan has yet been filed. However, along with Schedule I, the debtor filed Schedule J which, although not offered into evidence, this Court also takes judicial notice of. Schedule J shows the debtor's monthly expenses in the amount of $955.00 per month, which amount appears to include $235.00 per month for property taxes, although it is clear from the evidence that no property taxes have been paid for several years.

Schedule A, which lists the value of real property, shows this property listed at $50,-000.00 and four other properties listed at various values. The total real property value is shown as $127,500.00.

Based upon testimony of Ms. Troia, who claims to own a half interest in all of the real property, the Court finds as a fact that the debtor has, at best, a one-half interest in the real properties listed on Schedule A. Using the debtor's valuation, the interest of the debtor does not exceed $64,000.00 less one-half of the real property taxes in the approximate amount of $9,000.00. Therefore, the total real property assets of this debtor do not exceed $55,000.00.

The debtor lists personal property valued at approximately $4,000.00, $550.00 of which is cash. No bonds or other cash equivalents are listed.

The only creditors listed, besides the taxing authority are a lawyer for pre-bankruptcy services in the amount of $500.00, the Metropolitan Utilities District for utility bills in the amount of $990.00 and other claimants with claims in unknown amounts.

From the transcript of the City Council proceeding and the exhibits received by the City Council, the Court finds that this house was moved onto the real property in 1956. Since 1956, the house has not been completed. There is no finished driveway or sidewalk. The City went through numerous hearings to get the debtor to even

paint the exterior of the house. The City has been through various hearings over a period of thirty years to get the debtor to repair the house and keep it close to conformity with the City ordinances. The debtor has not made any attempt to correct the deficiencies pointed out by the City officials until serious threats of condemnation have been made. Then, on various occasions, the debtor has made minimal repairs which may or may not have satisfied the City officials. Although Joan Troia testified that she and the debtor plan to rehabilitate the house and put it in condition for rental, this house has not had a rental tenant for more than ten years. The other houses that are proposed to be rented have not had a tenant for more than ten years and none of the houses meet City Code requirements for occupancy.

None of the houses are currently rented and there is no rental income to the debtor.

The debtor's schedule of assets and income are a fantasy. He does not own $127,000.00 worth of real property. He has, at best, an undivided one-half interest in the real property with a value not in excess of $55,000.00 on a net basis. He has no rental income. Instead, he has, apparently, Social Security benefits in the amount of $330.00 per month.

He does not have income or assets sufficient to permit him to pay for repairs and rehabilitation necessary to put this property or his other properties in occupancy condition.

Joan Troia testified that she had $20,-000.00 in cash or cash equivalents that she was willing to use to repair this house. She believes that the expenditure of $20,-000.00 should be sufficient to complete all the repairs required by the City.

On the other hand, the Assistant Director of Planning for the City of Omaha testified that the actual cost to bring the house up to occupancy standards under the City Code would be approximately $56,-000.00. He testified that the roof structure needed complete replacement. There had been water damage both to the roof and to the floors. The various floor structures had mildewed and complete replacement would be necessary. He further testified that the scope of the repairs would not simply be general repairs, but that the plumbing, electrical, heating and air conditioning systems would need to be redone by licensed members of the appropriate trades and that all building code requirements would need to be met, including construction of a driveway, placement of sidewalks, etc.

His opinion of the cost of repair and reconstruction is given more weight than Ms. Troia, because of his extensive experience in this field as testified to on direct and cross examination.

He further testified that under the City Code, the house was not safe for occupancy and that no person should be permitted to enter the house except for repair and reconstruction. However, he testified that it was clear from an inspection of the interior of the house and from statements made to City officials by the debtor, that the debtor had on occasion occupied the house overnight to protect it from vandals. He further testified that, contrary to the order of the City and the affirmance by the City Council, the debtor had a small area of living quarters within the interior of the house that he did, on occasion, occupy, which actions were in violation of the City ordinances.

At the hearing before the City Council, the City Council received evidence, in the form of letters from neighbors, that illegal activities had taken place at the house, that it was not always closed up and children could easily enter the premises and that the building was unsafe. In addition to such evidence, the City Council had statements from the City officials in charge of the condemnation process with regard to the unsafe nature of the house.

At this hearing on a temporary restraining order, it is not the burden of the City to prove once again that the property is unsafe. There is a final nonappealable order making a finding of unsafe conditions and the necessity of destruction of the property. Those factual findings are not in question before this Court on this motion.

Based upon the standard articulated by the Eighth Circuit Court of Appeals in *Dataphase, supra,* the Court finds that the destruction of the house will not irreparably harm the movant. There is no competent evidence that rehabilitation of the house will cost less than $56,000.00. There is no evidence that the debtor has available any more than $20,000.00, which may be a contribution by his sister. There is no evidence that even if the property is totally rehabilitated, it would rent for $500.00 per month. There is no evidence that the debtor has sufficient income or assets to accomplish rehabilitation within six months or six years. He hasn't accomplished any rehabilitation in the last thirty years and there is no evidence, other than testimony by his sister, that he intends to, desires to, or has the financial ability to rehabilitate the property now or in the near future.

From a review of the bankruptcy schedules and the testimony and other evidence presented at the hearing, this Court finds as a fact that the probability of success at trial is quite low. The probability of success in this case means successful confirmation of a Chapter 13 plan. To obtain such confirmation, the debtor would need to prove, not only that he has sufficient regular income to pay whatever debts existed on the petition date, but also prove that he has sufficient assets and income to rehabilitate the buildings located on properties that he has an ownership interest in and receive rental income from those properties within a relatively short period of time. There is no evidence that confirmation under such circumstances is possible.

One of the prongs of the *Dataphase* formula requires the Court to consider the public interest. The public interest in this case is to have this structure removed from the real property. It has sat in an unfinished condition for more than thirty years and has been unoccupied for most of that time. It has been determined in a final nonappealable order that it is unsafe. The debtor has been given years to put the property in the appropriate condition for occupancy and meet the various City Code requirements. He has apparently not had the financial ability to do so or, if he has had such financial ability, he has not had the willingness to expend his financial resources to comply with the requirements of the City Code. The property has been determined to be unsafe and a delay in its demolition will simply add to the potential opportunity for some member of the public, most likely a child, to be harmed. Therefore, after considering all of the evidence presented and the case law requirements for the entry of a temporary restraining order, the Court finds that the motion for temporary restraining order should be and is hereby denied.

## C. *Procedure*

This matter was brought to the attention of the Court through a motion filed in the bankruptcy case. The Bankruptcy Code at Section 105(a) provides:

> The court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

Based upon the statutory authority contained in Section 105, this Court entertained this emergency motion in the bankruptcy case, on an expedited basis. However, Fed.Bankr.R. 7065 incorporates Rule 65 of the Federal Rules of Civil Procedure. That rule deals with temporary restraining orders and preliminary injunctions. Fed.Bankr.R. 7065 provides that Rule 65 of the Federal Rules of Civil Procedure applies in adversary proceedings. No adversary proceeding was filed with regard to this matter until after the noon lunch break in the hearing that was held on February 18, 1993. That adversary proceeding was filed only as a result of the Court raising the issue of whether or not it had jurisdiction because of the language of Fed.Bankr.R. 7065.

At least two bankruptcy courts have determined that injunctive relief is unavail-

able by motion in a bankruptcy case and is available only in an adversary proceeding. *In re Garnett*, 47 B.R. 170 (Bankr. E.D.N.Y.1985); *In re Nasco P.R., Inc.*, 117 B.R. 35 (Bankr.D.P.R.1990).

 This Court has jurisdiction of the matter because a bankruptcy case has been filed and because of the statutory authority to enter appropriate orders as outlined in Section 105 of the Code. However, the Court agrees with the *Garnett* and *Nasco* decisions that interpret the Bankruptcy Code and Rule 7065 to mean that injunctive relief is not usually available without the filing of an adversary proceeding. If this case were to proceed further to a final hearing on a preliminary injunction, it would do so under the auspices of the adversary proceeding filed on February 18, 1993, entitled *Frank Catalano v. City of Omaha,* A93–8028.

Separate journal entry shall be filed.