In re Steven Wayne KOELLER, Debtor.

Bankruptcy No. 91–43729–2.

United States Bankruptcy Court, W.D. Missouri.

Aug. 9, 1994.

Larry D. Chipman, Independence, MO, for debtor.

Gary D. Barnes, Kansas City, MO, Trustee.

Kip A. Stetzler, Kansas City, MO, for Boatmen's.

## *ORDER*

FRANK W. KOGER, Chief Judge.

Steven Wayne Koeller filed his petition for rehabilitation under Chapter 13 on December 17, 1991. He converted to Chapter 7 on November 1, 1993. Among the assets he listed was a rental house at 6200 South Walrond, Kansas City, Missouri. The Chapter 7 Trustee and the first lien holder initially felt there was value in this property, but subsequently the Trustee reconsidered and served on all creditors a Notice of Intent To Abandon the property on December 30, 1993. The first lien was a deed of trust held by Boatmen's First National Bank of Kansas City. On January 11, 1994, the debtor and the bank entered into a Stipulation For Relief From The Automatic Stay whereby the debtor surrendered any interest in the property and the Court was requested to enter an Order For Relief From The Stay so that the bank could foreclose on the property. That Order was duly entered on January 12, 1994, and nothing further was heard by the Court in regard to the property at 6200 South Walrond until June 9, 1994, when the debtor filed what he entitled as a Motion To Enforce Automatic Stay And To Compel Creditor Boatmen's First National Bank To Take Charge Of Real Estate.

In that Motion debtor outlined the foregoing material. In addition, debtor alleged that on May 26, 1994, the property was severely damaged by fire and that the debtor had not maintained insurance on the property since he had stipulated to the lift of the stay. Debtor further alleged that Boatmen's First National Bank had not insured the property and that the City of Kansas City had declared the property to be a dangerous building and had served notice upon the debtor of that fact as well as ordering the debtor to demolish the building or else the City would proceed to demolish the building and charge the debtor. Further, the City was likely to proceed with criminal prosecution of a violation of city ordinances. The letter from the City indicated that all costs of demolition would be billed as a special tax bill and would not only be a lien against the property, it would also be a personal debt against the property owner. Conviction for failure to comply with the ordinances could result, according to the city letter, in a fine up to $500.00 or a jail sentence of up to 180 days.

Boatmen's Bank filed a response to the Motion indicating that at no time did the debtor surrender the property or turn the property over to Boatmen's. According to Boatmen's, all debtor did was allow them to foreclose without the necessity of a hearing on the Motion To Lift Stay.

The initial hearing was set for July 5th and on that date the parties appeared by counsel and announced to the Court that a proposal had been made which the parties were considering and asked that they be given additional time so that they perhaps could compromise the entire problem. The Court granted that request and rescheduled the hearing on debtor's Motion for July 25, 1994, after being notified about July 15th that the compromise had not been worked out.

At the hearing on July 25th it was the two pronged position of the debtor that the city should be stayed from any action since he was in bankruptcy and that the bank should be required to respond to the city's demands because the debtor had, in effect, surrendered possession of the property to the bank even though title was still in the debtor's name and the bank had never done anything toward foreclosing the property.

It was the bank's position that after the debtor had agreed to the mutual stipulation allowing lift of the stay, the bank had access to the property, evaluated the property for the first time and come to the conclusion that it was not economically feasible to proceed with foreclosure and take possession. In view of the fact that title was still in the debtor's name, the property had been abandoned by the trustee to the debtor, and the bank had never taken possession nor title to the property, the bank felt it should have no responsibility.

The city had a third posture in the case. It also had two strings to its bow. In the first place the city said that requiring the debtor to demolish the dangerous structure was an exercise of the city's police power. It was the city's contention that 11 U.S.C.

§ 362(b)(4) insulated its actions from the operation of the automatic stay. Further the city contended that the obligation of the debtor to demolish arose on May 26, 1994, well after the filing of the Chapter 13 case and the conversion to Chapter 7. Thus, it was not a debt or obligation that would be affected by the present bankruptcy since it occurred post-petition.

Thus, it seems to the Court that it is faced with two disparate questions. The first of these is whether or not the Court should hold that the city is stayed from any action against the real estate at 6200 South Walrond and/or the debtor by the automatic stay imposed by the Bankruptcy Reform Act? The second question is—is there any authority for the Court to make the bank pay for the demolition of the real estate under the same statutes?

## I.  Whether the city if stayed from proceeding against the debtor and/or the real estate?

As to the first question, 11 U.S.C. § 362(a) provides (in relevant part:)

(a) Except as provided in subsection (b) of this section, a [bankruptcy] petition ... operates as a stay, applicable to all entities, of—

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

(2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;

(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;

(4) any act to create, perfect or enforce any lien against property of the estate;

(5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;

(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title;

(7) the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor.

The automatic stay in 11 U.S.C. § 362(a) is extremely broad in scope, encompassing administrative, judicial, and other similar proceedings, and applies to all entities, including governmental units. 2 Lawrence P. King, ed., Collier on Bankruptcy, ¶ 362.04 (1994). Under the circumstances of this case, however, the automatic stay does not operate to bar the City's action against Koeller or the real estate at 6200 South Walrond.

■ The stay of litigation against the debtor under subsection (a)(1) is limited to actions that could have been commenced before the commencement of the case or which are based upon claims that arose before commencement of the case. 2 Lawrence P. King, ed., Collier on Bankruptcy, ¶ 362.04[1] (1994). Postpetition matters are not covered by § 362(a)(1). 2 Norton Bankruptcy Law and Practice 2d, § 36:5 (1994). "With the exception of § 362(a)(3) and § 362(a)(4), § 362(a) contemplates the staying of acts against the debtor or his property that are based upon claims arising prior to the filing of the bankruptcy petition." *In re Knight*, 8 B.R. 925, 928 (Bankr.D.Md.1981). "[A] claim based upon post-petition default is not within the scope of [the automatic] stay because such a claim could not have been made before the bankruptcy." *Id.* at 928. The fire and resulting damage to the real estate at 6200 South Walrond occurred on May 26, 1994, after Koeller filed his petition under Chapter 7. The City's claim against Koeller for demolition of the real estate and possible criminal prosecution occurred postpetition and the automatic stay in § 362(a)(1)–(a)(2) and § 362(a)(5)–(a)(7) does not apply.

In this case, the stay of acts against property of the estate provided by § 362(a)(3) and

§ 362(a)(4) is also inapplicable. On January 28, 1994, the Trustee abandoned the real estate at 6200 South Walrond to Koeller. "[A]bandonment constitutes a divesture of all interests in property that were property of the estate." 4 Lawrence P. King, ed., Collier on Bankruptcy, ¶ 554.02[2] (1994). Once the real estate was abandoned by the Trustee, it was removed from the bankruptcy estate and reverted to Koeller as though no bankruptcy occurred. See *In re Manchester Heights Assoc., L.P.*, 165 B.R. 42, 44 (Bankr.W.D.Mo. 1994). Because the property at 6200 South Walrond is no longer property of the estate, the stay imposed by § 362(a)(3) and § 362(a)(4) no longer applies. See *In re Knight*, 8 B.R. at 929.

Further, the City's claim arose after Koeller had been discharged on March 11, 1994. Koeller had received his "fresh start" when the property burned. See 4 Lawrence P. King, ed., Collier on Bankruptcy, ¶ 727.01[1] (1994).

The City contends that the exception to the automatic stay found in 11 U.S.C. § 362(b)(4) applies herein. Because the automatic stay in 11 U.S.C. § 362(a) does not bar the City's proceedings against the real estate at 6200 South Walrond or against Koeller, it is not necessary to determine whether the exception to the automatic stay found in § 362(b)(4) applies. However, it is necessary to consider this exception to examine the ability of the City of Kansas City to enforce sanctions against debtor.

■ It appears that City action under Chapter 20, Article IV, §§ 20.127 and 20.129 of the Property Maintenance Code of Kansas City, Missouri found in the Code of General Ordinances of Kansas City, Missouri would be excepted under § 362(b)(4). The ordinances and state statutes that they implement, Mo.Rev.Stat. § 67.400 *et seq.* (1989), are directed primarily towards protecting the health, safety, welfare, life, and property of the public and effectuate the public policy of protecting the residents of Missouri from dangerous buildings. It would seem, therefore, this could well be an appropriate function of the City's police power under the exception in 11 U.S.C. § 362(b)(4).

Related to § 362(b)(4) is § 362(b)(1), which provides an exception from the automatic stay for the "commencement or continuation of a criminal action or proceeding against the debtor." Bankruptcy relief is not a shelter from the consequences of criminal acts. 2 Lawrence P. King, ed., Collier on Bankruptcy, ¶ 362.05[1] (1994). However, "the collection of a fine which is thereafter imposed from property of the estate" is not excepted from the automatic stay. *Id.* The City's threatened criminal prosecution of Koeller for his failure to comply with the ordinances likewise would be excepted from the automatic stay.

In sum, the City is not stayed from any action against the real estate at 6200 South Walrond or Koeller under 11 U.S.C. § 362(a).

## II. Whether Boatmen's First National Bank of Kansas City can be held monetarily liable for the cost of the demolition of the real estate at 6200 South Walrond?

■ Under the situation herein, the Bank is not liable to the City for the costs of demolition. Pursuant to applicable Missouri law, the Bank is not the owner of the real estate at 6200 South Walrond. The first lien on the property at 6200 South Walrond was a deed of trust held by the Bank. Missouri has adopted the "lien theory" of mortgages as the law of the state. *R.L. Sweet Lumber Co. v. E.L. Lane, Inc.*, 513 S.W.2d 365, 369 (Mo.1974). "'"A deed of trust in the nature of a mortgage given on land to secure the payment of a debt is held to be "a lien and nothing more...."' So viewed, it is neither an estate in land nor a right to any beneficial interest therein. It is neither jus in re nor jus ad rem. It is merely the right to have the debt, if not otherwise paid, satisfied out of the land."'" *Id.* at 368. The ownership of a deed of trust on property does not constitute ownership of the title to the property. *Id.* See *Kenny's Tile & Floor Covering, Inc. v. Curry*, 681 S.W.2d 461, 471 (Mo. App.1984). A deed of trust is not an outright conveyance of the title. *In re Title Guar. Trust Co.*, 113 S.W.2d 1053, 1057 (Mo.App. 1938).

"The grantor of the deed of trust continues as owner of the land until entry for breach of condition, and then foreclosure under power of sale." *Tipton v. Holt,* 610 S.W.2d 659, 661 (Mo.App.1981). " '[U]ntil final foreclosure, the mortgagor continues [to be] the owner of the estate.' " *Lustenberger v. Hutchinson,* 343 Mo. 51, 119 S.W.2d 921, 928 (1938). The Bank never foreclosed on the real estate held under the deed of trust. Pursuant to Missouri law, Koeller is the owner of the property at 6200 South Walrond.

Koeller contends that he surrendered possession of the real estate at 6200 South Walrond to the Bank. 11 U.S.C. § 521(2)(A) requires an individual chapter 7 debtor with secured consumer debts to file a statement of intention with respect to the debtor's property within 30 days of the petition date. Koeller filed a statement of intention in which he indicated that he intended to surrender the property at 6200 South Walrond to the Bank. 11 U.S.C. § 521(2)(B) requires the debtor to perform the stated intention within 45 days of the filing of the statement required by § 521(2)(A).

The "surrender" of a debtor's collateral involves the debtor's surrendering the collateral to the lienholder who then disposes of it pursuant to the requirements of state law. *In re Taylor,* 3 F.3d 1512, 1514 n. 2 (11th Cir.1993) (Chapter 7 case). Under the Bankruptcy Code, the surrender of collateral requires the mutual agreement between the parties and occurs as a result of the consent of both parties. *In re Service,* 155 B.R. 512, 514 (Bankr.E.D.Mo.1993) (Chapter 13 case). Surrender "means 'to give back; yield; render up; restore; ... the giving up by a bankrupt of his property to his creditors.' " *In re Robertson,* 72 B.R. 2, 4 (Bankr.D.Colo. 1985) (Chapter 13 case).

In *In re Service* the Chapter 13 debtors sought an order from the Bankruptcy Court compelling Security Pacific, a secured creditor holding a deed of trust on a parcel of real estate owned by the debtors, to foreclose on the realty and take title in its name. The issue before the court was whether surrender of property to a secured creditor under 11 U.S.C. § 1325(a)(5)(C) pursuant to the terms of a confirmed Chapter 13 plan compelled Security Pacific to accept title to the surrendered realty.

The debtors argued that the failure of Security Pacific to foreclose on the surrendered realty placed them at risk of liability for taxes, personal injury, and housing violations. The debtors asserted that because § 1325(a)(5)(C) allowed them to surrender collateral to Security Pacific in satisfaction of its secured claim, Security Pacific must accept surrender of the collateral, that is, foreclose on the property and take title in its name. The court rejected the debtors contentions ruling that the debtors could not compel Security Pacific to accept surrender nor enforce its rights and take title to the realty absent Security Pacific's consent. *In re Service,* 155 B.R. at 514. The court found that Security Pacific had been given the remedy of receiving its collateral in satisfaction of its secured claim, had obtained relief from the automatic stay to pursue any other remedies it had under its note and deed of trust, and whether to proceed with its remedies was within the sole discretion of Security Pacific. *Id.* at 514. The court held that it could not compel Security Pacific to accept the surrendered property. *Id.* at 515.

Here, Koeller filed a Motion to Enforce Automatic Stay And to Compel Creditor Boatmen's First National Bank To Take Charge Of Real Estate. The principles enunciated in *In re Service,* although a Chapter 13 case, apply here to bar Koeller's attempt to compel the Bank to accept surrender of the real estate at 6200 South Walrond.

Further, the evidence shows that Koeller never took any affirmative action to surrender possession of the property to the Bank. The Bank argued that after the stay was lifted, it had access to the property, and after an evaluation determined that it would not be economically feasible to proceed with foreclosure and take possession. The Bank argued that Koeller never turned over the keys to the property at 6200 South Walrond, and never surrendered, attempted to surrender, or discussed surrendering the property to the Bank.

There is nothing to show that Koeller did any more than step out of the Bank's way so

that the Bank could foreclose. He never turned over the real estate to the Bank, nor did the Bank accept the property. The failure to take the action stated in the statement of intention does not affect Koeller's rights in the real estate. See 3 Lawrence P. King, ed., Collier on Bankruptcy, ¶ 521.09A[5] (1994). Although the parties stipulated to lift the automatic stay so the Bank could have an opportunity to foreclose its security interest, the Bank has taken no steps to foreclose on the property. The legal title would pass upon the foreclosure sale. See *Gempp v. Teiber*, 173 S.W.2d 651, 653 (Mo.App.1943). Under Missouri law, Koeller remains the owner of the real estate. Chapter 20, Article IV, § 20.127(f)(6) of the Property Maintenance Code of Kansas City, Missouri provides that demolition charges shall be collectible by a special tax bill that shall be deemed

a personal debt against the property owner and shall also be a lien on the property. The Bank is not the owner of the property at 6200 South Walrond under applicable Missouri law or under the Bankruptcy Code and is not liable for the demolition costs.

The foregoing Memorandum Opinion constitutes Findings of Fact and Conclusions of Law as required under Rule 7052, Rules of Bankruptcy.

SO ORDERED.