**In the Matter of Ginger Kay PHILLIPS, Debtor.**

**Ginger Kay Phillips, Plaintiff,**

**v.**

**City of South Bend, defendant.**

**Bankruptcy No. 05–34260 HCD.**
**Adversary No. 06–3061.**

United States Bankruptcy Court, N.D. Indiana, South Bend Division.

March 27, 2007.

Loraine P. Troyer, Esq., Goshen, IN, attorney for plaintiff.

Ann–Carol Nash, Esq., Assistant City Attorney, South Bend, IN.

## MEMORANDUM OF DECISION

HARRY C. DEES, JR., Bankruptcy Judge.

Before the court is the Motion for Summary Judgment filed by the City of South Bend ("City"), defendant in this adversary proceeding. It moves for summary judgment in its favor on the Complaint filed by Ginger Kay Phillips ("Phillips" or "debtor"), chapter 7 debtor and the plaintiff in this case. The debtor filed a brief on the Complaint and a Response Brief and Answer to the Motion for Summary Judgment. The court then took the motion under advisement. For the reasons that follow, the court grants the City's Motion for Summary Judgment.

### Jurisdiction

Pursuant to 28 U.S.C. § 157(a) and Northern District of Indiana Local Rule 200. 1, the United States District Court for the Northern District of Indiana has referred this case to this court for hearing and determination. After reviewing the record, the court determines that the matter before it is a core proceeding within the meaning of § 157(b)(2)(O) over which the court has jurisdiction pursuant to 28 U.S.C. §§ 157(b)(1) and 1334. This entry shall serve as findings of fact and conclusions of law as required by Federal Rule of Civil Procedure 52, made applicable in this proceeding by Federal Rules of Bankruptcy Procedure 7052 and 9014. Any conclusion of law more properly classified as a factual finding shall be deemed a fact, and any finding of fact more properly classified as a legal conclusion shall be deemed a conclusion of law.

### Background

On July 27, 2006, in their Stipulation of Facts, the parties presented uncontested facts that provide the background to this adversary proceeding. See R. 15.

Phillips filed a voluntary chapter 7 petition on August 3, 2005. At that time, she was the owner of record of three real properties in South Bend, Indiana. The property at issue here is real estate at 703 North Johnson, South Bend, Indiana ("the property").

The Department of Code Enforcement for the City issued numerous citations to Phillips for violations of Section 16–53 of the South Bend Municipal Code on that property.[1] The Ordinance Violation Citations set fines for public nuisance violations on her property.[2] *See* Ex. 1. The City then filed small claims suits against Phillips on February 15, March 24, and April 26, 2006, alleging that she committed the ordinance violations. *See* Ex. 2. On February 28, March 31, and April 27, 2006, the City issued Orders to Comply, directing Phillips to make the listed repairs to the property, and Notices of a potential $5,000 civil penalty pursuant to the Unsafe Building Act, Indiana Code 36–7–9–1 et seq., for the property. *See* Ex. 3.

Phillips recorded a quit-claim deed with the St. Joseph Recorder's Office on May 11, 2006, in an effort to transfer the property to Citifinancial Mortgage, the creditor holding the mortgage lien. *See* Ex. 4. Phillips then filed this adversary proceeding against the City on May 12, 2006, seeking a determination that the City cease any actions against Phillips to enforce property maintenance standards.

In the Stipulation of Facts, the parties report that Citifinancial Mortgage has not acknowledged transfer of the property by quit-claim deed or taken responsibility for maintaining the property. Counsel for both parties, the plaintiff Phillips and the defendant City, seek a determination that Citifinancial should take responsibility for maintenance of the property if it seeks to enjoy the benefits of ownership of the property. If, on the other hand, Citifinancial does not acknowledge the transfer of the deed or take responsibility for the property, counsel seek a determination that Citifinancial should release any lien it has on the property and allow Phillips to enjoy the benefits of ownership or transfer title to a person or entity that will repair and maintain the property. The parties further agree that, in order for justice to be served, Citifinancial should be made a party to this adversary proceeding.[3]

The plaintiff's Complaint asserts that Phillips surrendered her interest in the property to the secured creditor Citifinancial and has not had any control or possession of the property since the day she filed her voluntary petition on August 3, 2005.[4] Counsel for the debtor sent a letter to the City, indicating that Phillips' interest in the property had been surrendered and that any liabilities related to the property had been discharged. When the City continued to pursue the claim against the debtor, counsel wrote another letter demanding that the City cease violating the

1. Article 8 of the South Bend Municipal Code concerns nuisances and penalties. Section 16–53 of that Article sets forth the conditions constituting public nuisances. *See* R. 23, "Submission of Authority in Support of Motion for Summary Judgment."

2. Ordinance violations, with fines, were issued against Phillips on August 27, 2005 ($150 fine); December 27, 2005 ($175 fine); January 20, 2006 ($250 fine); and February 14, 2006 ($150 fine). On each violation, she was charged with a public nuisance and failure to clean property. Although Phillips stated, in her Response Brief, that the first ordinance violation was issued August 5, 2005, no record of it was put in evidence.

3. The court takes notice of its Order of August 25, 2006, which denied the debtor's "Motion to Require the Mortgage Company to be Held Responsible for Property Located at 703 Johnson St., South Bend, IN." Two reasons were given for the denial: (1) The motion sought relief against an entity that was not a party to the litigation; and (2) the motion was filed without a brief or other materials in support. *See* R. 18.

4. The Trustee filed a no-asset report on August 31, 2005, and the Order discharging the debtor was entered on November 7, 2005. However, on May 18, 2006, the debtor reopened the case to file this adversary proceeding.

bankruptcy discharge. The debtor's attorney then sent notice to the City of her intention to file an adversary proceeding. On April 27, 2006, the City obtained an Order to Comply and Notice of $5,000 Civil Penalty. That Order was set for hearing on May 16, 2006. The Complaint alleged that the City's actions to enforce property maintenance code standards violated 11 U.S.C. §§ 362 and 524(a)(2). The City filed its answer, denying all essential allegations of the Complaint. After a telephonic pre-trial conference was held on June 28, 2006, the parties were directed to file a Stipulation of Facts and briefs on the matter.

On September 1, 2006, the City filed its Motion for Summary Judgment. It argued that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *See* R. 21.

The Memorandum in support of the motion relied on the Affidavit of Catherine M. Toppel, Director of the Department of Code Enforcement for the City. *See* R. 24. She stated that Department of Code Enforcement records indicated that Phillips was the owner of record of the property from September 24, 2004 until May 11, 2006. The property was the subject of many property maintenance code violations. The Code Enforcement Inspector "documented finding extremely unsanitary conditions in the yard at the Property, including discarded diapers, garbage and trash in a house that was occupied without utility service." R. 24 at 3 ¶ 8. The Affidavit continued:

9. Ms. Phillips and the occupant did not improve the conditions at 703 Johnson even after the City sent notices to abate the violations or be subject to further legal action. The same items documented in January were still present in March 2006.

10. The City has had to monitor, clean and maintain 703 Johnson since August 2005, and has not been paid for the work it has performed to do so.

11. In May 2006 I received a copy of a facsimile from Ms. Phillips' counsel forwarding a copy of a quit-claim deed purporting to transfer 703 Johnson to Citifinancial Mortgage.

12. Since the quit-claim deed was recorded, the City has had to continue to monitor and maintain 703 Johnson as before. The City has sent Citifinancial Mortgage notices, invoices for securing the property and other correspondence and has received no response.

. . .

15. The ongoing public nuisance at 703 Johnson creates a blight which affects the surrounding neighborhood and the City as a whole. If this blight is allowed in all cases where a property owner seeks debt relief, the City will be without recourse to protect the public health, safety and welfare.

R. 24 at 3–4.

The City, in its summary judgment memorandum, presented several arguments about which, it claimed, there is no genuine issue of material fact. First, it asserted that the automatic stay does not prohibit governmental action by a municipal corporation charged with executing laws to protect the health, safety, welfare and morals of the citizens. The City was carrying out that responsibility by enforcing its property maintenance codes with respect to a public nuisance. The Notices and Orders were issued pursuant to the City's police power, it contended. The City pointed to 11 U.S.C. § 362(b)(4), which expressly excepts from the automatic stay any governmental action to enforce the government's police and regulatory power. It insisted that the City's enforcement of its property maintenance standards is just such a governmental action and is a classic use of the city's police

power. Its enforcement actions thus are excepted from the automatic stay under § 362(b)(4).

The City distinguished governmental actions to collect a debt (such as actions to collect ambulance bills), which are subject to the automatic stay, from actions to enforce orders to repair or to clean property, which are excepted from the stay. It argued that the test of police power is objective: If the purpose of the law being enforced is for public safety and welfare and is not pecuniary, then the governmental action is not stayed. In this action, the City's enforcement of property maintenance codes to protect public health, safety and welfare should not be stayed, it insisted.

The City also contended that the debtor's actions, in executing and recording the quit-claim deed, did not effectively transfer the property to Citifinancial, the mortgage company. Because Citifinancial did not accept the transfer, the ownership rights and responsibilities remained with Phillips, said the City.

The debtor responded that the City, by issuing ordinance violations against her personally, violated the automatic stay. She filed her chapter 7 bankruptcy on August 2, 2005, and received her discharge on November 7, 2005. On May 11, 2006, she transferred the property to Citifinancial by quit-claim deed, recorded it at the St. Joseph County Recorder's Office, and sent it to Citifinancial. Through her attorney, Phillips notified the City numerous times of its continued violations of the automatic stay, before and after the discharge of this case. Phillips contended that the City's lawsuits against her on February 15, March 24, and April 26, 2006, were continuing violations of the discharge under § 524(a)(2). The statute provides that a discharge is an injunction against the collection of any debt as a personal liability of the debtor. The debtor insisted

that she is not responsible for the condition of the property. Moreover, she argued that the City has commenced actions against her personally, instead of placing a judgment against the real estate or selling that property to recover the expenses incurred for curing its unkempt appearance. She filed this adversary proceeding against the City to cease its actions against Phillips regarding this property and to require the City to pay damages and attorney fees.

In her Response Brief, the debtor agreed that the City can enforce its property maintenance standards but insisted that it cannot pursue money judgments against her in personam. She recommended that the City foreclose on the property and sell it to recover the City's expenses in cleaning the property. She also asserted again that legal ownership of the debtor's property was transferred to Citifinancial Mortgage in May 2006 and that the City should turn to Citifinancial, not the debtor, for responsibility for the property.

*Discussion*

The defendant, the City of South Bend, can prevail on its summary judgment motion only if it meets the criteria for summary judgment. Under Rule 56(c) of the Federal Rules of Civil Procedure, made applicable in this court by Rule 7056 of the Federal Rules of Bankruptcy Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio*

*Corp.*, 475 U.S. 574, 585–86, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). In order to avoid trial, the moving party bears the burden of showing that no genuine issue of material fact is in dispute. *See Anderson*, 477 U.S. at 256, 106 S.Ct. 2505; *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548. "To avoid summary judgment ... the nonmoving party [is] required to set forth 'specific facts showing that there is a genuine issue for trial,' Fed.R.Civ.P. 56(e), and, further [has] to produce more than a scintilla of evidence in support of his position." *Silk v. City of Chicago*, 194 F.3d 788, 798 (7th Cir.1999). In order to demonstrate that real factual disputes exist, the nonmovant must produce evidence of the disputes rather than relying solely on the allegations or denials in its pleadings. *See Barber v. United States (In re Barber)*, 236 B.R. 655, 659 (Bankr.N.D.Ind.1998); N.D. Ind. L.B.R. B–7056–1. Summary judgment must be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548.

The disputes between the parties are of a legal, not factual, nature. They disagree about whether the City violated the automatic stay issued in the debtor's chapter 7 case; whether the City violated the order granting the debtor a discharge; and whether the debtor effectively transferred the property at issue. The court first considers the debtor's claim that the City violated the automatic stay by issuing ordinance violations against her and the City's claim that its actions were excepted from the stay as a matter of law.

### A. 11 U.S.C. § 362(a); 11 U.S.C. § 362(b)(4)

When the debtor filed her chapter 7 petition seeking the protection of the bankruptcy laws, the automatic stay arose automatically and as a matter of law. The stay prevented actions against the debtor, her property, and the property of her estate by various entities. *See* 11 U.S.C. § 362(a).[5] It remained in force until the debtor's discharge was granted. *See* § 362(c)(2). If a creditor willfully violated the stay, the debtor might recover damages, including costs and attorney's fees. *See* § 362(h).

However, § 362(b) sets forth exceptions to the automatic stay. Certain activities are not stayed automatically when a bankruptcy petition is filed. Section 362(b)(4) provides that the filing of a petition does not operate as a stay of "the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power." The term "police or regulatory power" is not defined in the Bankruptcy Code. However, the statute's legislative history states that § 362(b)(4) includes a governmental unit's suits against a debtor "to prevent or stop violation of fraud, environmental protection, consumer protection, safety, or similar police or regulatory laws." H.R.Rep. No. 595, 95th Cong., 1 st Sess. 343 (1977), *reprinted in* 1978 U.S.Code Cong. & Admin. News 5787, 5963, 6299; S.Rep. No. 989, 95th Cong., 2d Sess. 52 (1978), *reprinted in* 1978 U.S.Code Cong. & Admin. News, pp. 5787, 5838 (cited in *In re Herrera*, 194 B.R. 178, 184–85 (Bankr. N.D.Ill.1996)).[6] The Seventh Circuit

---

5. The debtor cited only § 362(a)(1), which prohibits "the commencement or continuation ... of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced *before the commencement of the case*." (emphasis added) Although only post-petition actions were al-

leged, it seems possible to the court that ordinance violations "could have been commenced" pre-petition. The court therefore will address possible violations of § 362(a)(1).

6. As the *Herrera* court pointed out, the "police power" exception was meant to protect public

Court of Appeals advises that the exception is to be "narrowly construed," but applies it "to the enforcement of state laws affecting health, welfare, morals, and safety." *Cash Currency Exchange, Inc. v. Shine (In re Cash Currency Exchange, Inc.)*, 762 F.2d 542, 555 (7th Cir.); *cert. denied*, 474 U.S. 904, 106 S.Ct. 233, 88 L.Ed.2d 232 (1985) (citing *State of Missouri v. United States Bankruptcy Court*, 647 F.2d 768, 776 (8th Cir.1981), *cert. denied*, 454 U.S. 1162, 102 S.Ct. 1035, 71 L.Ed.2d 318 (1982)).

■ In deciding whether a city's actions are subject to the automatic stay or fall within the exception to the automatic stay under the police power exception, courts consider whether the actions relate to matters of public safety and health or to "protection of the government's pecuniary interest in the debtors' property." *Smith–Goodson v. CitFed Mtg. Corp. (In re Smith–Goodson)*, 144 B.R. 72, 74 (Bankr. S.D.Ohio 1992). As the Fourth Circuit stated it, if the primary purpose of the law being enforced is for public safety and welfare and is not pecuniary in nature, then the governmental action is not stayed. *See Safety–Kleen, Inc. (Pinewood) v. Wyche*, 274 F.3d 846, 865 (4th Cir.2001). Several tests have been established to determine which purpose is primary.

... Under the pecuniary purpose test, a court looks to whether a governmental proceeding relates to public safety and welfare, which favors application of the stay exception, or to the government's interest in the debtor's property, which does not. The public policy test, in turn, distinguishes " 'between proceedings that adjudicate private rights and those that effectuate public policy.' " The inquiry is objective—a court must examine the purpose sought to be achieved by the law generally, rather than the government's intent in enforcing the particular law in that case.

Other courts have backed away from the "pecuniary purpose" test, and apply a broader "pecuniary advantage" test. Under the "pecuniary advantage" test, the relevant inquiry is not whether the governmental unit seeks property of the debtor's estate, but rather whether the specific acts that the government wishes to carry out would create a pecuniary advantage for the government vis-a-vis other creditors.... [U]nder the pecuniary advantage test, the § 362(b)(4) exception applies to actions that seeks [*sic*] to enter a judgment for money damages because it would "simply fix the amount of the government's unsecured claim against the debtors" and would not otherwise "convert the government into a secured creditor, force payment of a prepetition debt, or otherwise given [*sic*] the government a pecuniary advantage over other creditors of the debtors' estate."

*United States ex rel. Fullington v. Parkway Hosp.*, 351 B.R. 280, 283 (E.D.N.Y. 2006) (citations omitted) (finding the pecuniary advantage test the appropriate stan-

---

health and safety. *See In re Herrera*, 194 B.R. at 184 (citing *Midlantic Nat'l Bank v. New Jersey Dept. of Envtl. Prot.*, 474 U.S. 494, 503–04, 106 S.Ct. 755, 760–61, 88 L.Ed.2d 859 (1986)).

The goal of preserving a debtor's bankruptcy estate is not always the dominant goal of bankruptcy proceedings. *Penn Terra Ltd. v. Department of Envtl. Res., Commonwealth of Pennsylvania*, 733 F.2d 267, 278 (3d Cir.

1984). "The provisions of the Bankruptcy Code do not and are not intended to provide an automatic mechanism for relieving property owners of the unpleasant effects of valid local laws embodying police and regulatory provisions." *In re Kennise Diversified Corp.*, 34 B.R. 237, 245 (Bankr. S.D.N.Y.1983) (citation omitted).

*Id.* at 185; *see also Smith–Goodson v. CitFed Mtg. Corp. (In re Smith–Goodson)*, 144 B.R. 72, 74 (Bankr.S.D.Ohio 1992).

dard to apply regarding the § 362(b)(4) exception).

This court considers first whether the actions relate to matters of public safety and health. Two decisions from bankruptcy courts in this circuit are instructive. In *Herrera*, a town's inspection of the debtor's real property was found to be an exercise of its police or regulatory power to protect the health, safety, and welfare of its citizens, and that action fell within the scope of § 362(b)(4). *See In re Herrera*, 194 B.R. at 185–86. In *Weller*, a town's issuance of housing code violations was found to be an action excepted from the automatic stay because it related to public health and safety. *See State of Wisconsin v. Weller (In re Weller)*, 189 B.R. 467, 471 (Bankr.E.D.Wis.1995). Other courts have applied the stay exception to the use of police and regulatory powers exercised to protect public health and safety. *See, e.g., Javens v. City of Hazel Park*, 107 F.3d 359, 363–64 (6th Cir.1997) (demolition of property in enforcement of building and fire codes was excepted from automatic stay); *In re Koeller*, 170 B.R. 1019, 1022 (Bankr.W.D.Mo.1994) (city's orders for compliance with ordinances and for property demolition did not violate automatic stay); *Lux v. County of Spotsylvania Board of Supervisors (In re Lux)*, 159 B.R. 458, 461 (Bankr.E.D.Va.1992) (finding exception to stay for disconnecting water from home); *In re Catalano*, 155 B.R. 219, 221 (Bankr.D.Neb.1993) (finding exception to stay for condemnation proceeding to rid city of unsafe structure); *In re Smith–Goodson*, 144 B.R. at 74–75 (finding exception to stay for violations of city ordinances in connection with real property). These cases present examples of classic exercises of a police or regulatory power by a governmental unit, and the actions were excepted from the automatic stay under § 362(b)(4).

In Indiana, "courts and learned authorities have historically viewed garbage as a potential nuisance having deleterious effects on people's health and safety." *Indiana Waste Sys. v. Indiana Dep't of State Revenue*, 633 N.E.2d 359, 364 n. 6 (Ind. Tax Ct.1994) (citing cases) ("[I]t has long been within the general scope of municipal police power to control, regulate, and execute garbage removal and disposal."). In this case, Phillips was cited for violation of § 16–53 of The South Bend Municipal Code. It provides, in pertinent part:

> (b) No owner, occupant, tenant, or any other person having a substantial interest in any real or personal property within the City, or any agent thereof, shall permit or allow to remain on or within such property or upon public ways abutting such real property any materials, trash, garbage, debris or any other matter which is detrimental to the public health, comfort, safety or to the aesthetic wellbeing of the community.

South Bend Municipal Code, Art. 8, § 16–53(b). Because that ordinance expressly is intended to protect public health, safety, comfort, and well-being of the community, the court finds that the City's enforcement orders pursuant to the local ordinance were a legitimate exercise of its police or regulatory power and were consistent with its duty to protect its residents. It determines that the actions taken in this case by the City, a governmental unit, to abate a public nuisance through enforcement of its property maintenance laws are excepted as a matter of law from the plaintiff's bankruptcy pursuant to § 362(b)(4). *See In re Towers*, 162 F.3d 952, 956 (7th Cir.1998) ("[S]tate law-enforcement actions are outside the scope of the stay to begin with."), *cert. denied*, 527 U.S. 1004, 119 S.Ct. 2340, 144 L.Ed.2d 237 (1999).

The court also finds that the City was acting pursuant to its police or regulatory power and not to protect its status as a creditor. *See Safety–Kleen, Inc.*, 274 F.3d at 865; *United States ex rel. Fullington*, 351 B.R. at 283. The primary purpose of the law being enforced was one of public health, safety and welfare, and was not pecuniary in nature. The City's purpose in issuing the ordinance violations was to remove all materials—garbage, trash, waste water, rubbish, waste, appliances, furniture in the yard—detrimental to public health. The fines issued to the debtor were not money judgments; they were the costs of reimbursing the City for the clean-up work (such as clearing garbage) and safety repairs (such as boarding up a window and door). The City did not attempt to enforce a money judgment or to create a pecuniary advantage for itself ahead of other creditors. Instead, the City charged fines to cover its expenses and placed financial liability on the property owner, the debtor, in the enforcement of its police power. The court determines that such actions are within the police and regulatory powers protected under the § 362(b)(4) exception to discharge.

> When the government seeks to impose financial liability on a party, it is plainly acting in its police or regulatory capacity—it is attempting to curb certain behavior (such as defrauding investors, or polluting groundwater) by making the behavior that much more expensive. It is this added expense that deters a party from defrauding or polluting—not the identity of the entity which it must eventually pay. Accordingly, up to the moment when liability is definitively fixed by entry of judgment, the government is acting in its police or regulatory capacity—in the public interest, it is burdening certain conduct so as to deter it. However, once liability is fixed and a money judgment has been entered, the government necessarily acts only to vindicate

its own interest in collecting its judgment. Except in an indirect and attenuated manner, it is no longer attempting to deter wrongful conduct. It is therefore no longer acting in its "police or regulatory" capacity, and the exception to the exception does not apply.

*Securities and Exchange Comm. v. Brennan*, 230 F.3d 65, 72–73 (2d Cir.2000), *quoted in U.S. ex rel. Fullington*, 351 B.R. at 287. The court further finds that the City's imposition of fines is like a court's imposition of sanctions and is exempt from the automatic stay. *See Alpern v. Lieb*, 11 F.3d 689, 690 (7th Cir.1993) (concluding that a proceeding to impose Rule 11 sanctions is exempt from the automatic stay under § 362(b)(4) because "the sanction is meted out by a governmental unit, the court"). As the Seventh Circuit instructed, "[t]he fact that the sanction is entirely pecuniary does not take it out of section 362(b)(4)." *Id.* (citing *In re Commonwealth Cos.*, 913 F.2d 518, 522–23 (8th Cir.1990)).

To summarize, the court determines that the City's actions to enforce its property maintenance standards by issuing ordinance violation citations, orders to comply, and notices of potential civil penalties constituted actions by a governmental unit to enforce its police or regulatory power, and § 362(b)(4) excepts those actions from the automatic stay as a matter of law.

### B. *11 U.S.C. § 524(a)(2)*

The second legal issue before the court is whether the City violated the court's order granting the debtor a discharge. The debtor alleges that the City's actions were a direct violation of the discharge injunction of § 524(a)(2). That section of the Bankruptcy Code provides that a discharge "operates as an injunction against the commencement or continuation of an action ... to collect, recover, or offset any

such debt as a personal liability of the debtor." Bankruptcy courts generally follow the Eleventh Circuit's test in deciding whether the injunction of § 524(a)(2) has been violated, and, if so, willfully. "The test applicable to the determination of a willful violation of the automatic stay under § 362 is equally applicable to the determination of willful violation of the post-discharge injunction under § 524." *In re Pincombe,* 256 B.R. 774, 783 (Bankr. N.D.Ill.2000) (citing *Hardy v. United States (In re Hardy),* 97 F.3d 1384, 1390 (11th Cir.1996)).

■ The court found that the § 362(b)(4) exception applied in this case as a matter of law. When the actions of the City, in enforcing its regulatory or police power, "are excepted from the automatic stay, continuation of the same proceedings after a debtor's discharge should not violate the post-discharge injunction under § 524(a)." *In re Pincombe,* 256 B.R. at 783; *see also In re Snodgrass,* 244 B.R. 353, 355 (Bankr.W.D.Va.2000) (government's post-discharge recoupment of benefit did not violate discharge injunction because there was no debt that was discharged under § 727). The plaintiff has cited no authority to support her assertion that the City's actions violated § 524(a)(2). Nor did she present any argument or reasoning to support her statement that the City cannot sue the plaintiff personally for the public nuisance condition of her property.

■ The court concludes, therefore, that the City's enforcement of its property maintenance codes was excepted from the automatic stay under § 362(b)(4) as a matter of law and in addition did not violate the post-discharge injunction of § 524(a)(2).

C. *Quit–Claim Deed and Ownership of the Property*

The court now considers the final issue, whether the debtor's execution and recording of a quit-claim deed transferred the property at issue to Citifinancial on May 11, 2006. In its summary judgment motion, the City contended that the quit-claim deed was not an effective transfer of the property to a transferee, in this case the mortgage holder Citifinancial, unless the transferee acknowledges such an obligation and accepts title to the property. The City urges the court to follow the reasoning in *In re Koeller,* 170 B.R. 1019 (Bankr.W.D.Mo.1994).

The facts in *Koeller* are similar to those before this court. In both cases, the chapter 7 debtor claimed a house as an asset but the trustee found it to be without value and abandoned the property. In both cases, the debtor no longer wished to maintain the property. In *Koeller,* however, the debtor and the bank holding the first lien on the property entered into a stipulation: The debtor surrendered his interest in the property so that the bank could foreclose on it. The court granted relief from the stay; however, the bank decided that it was not economically feasible to foreclose. The bank did not take possession or title to the property, and neither party maintained the insurance on it. After a fire, the city declared the property to be a dangerous building; it ordered the debtor to demolish it and threatened possible criminal prosecution. In *Koeller* (as in this case), no party felt it should have responsibility over the property. The city exercised its police power and required the debtor to be responsible for the demolition. The *Koeller* court found that the city's actions, which occurred post-petition and post-discharge, would have been excepted from the automatic stay, had they occurred during the debt-

or's bankruptcy, under § 362(b)(4) and (b)(1). It thus determined that the City was not stayed from any action against the real estate or against Koeller. *See* 170 B.R. at 1022.

The debtor, Koeller, believing that he had turned the property over to the mortgagee, had filed a motion to enforce the automatic stay and to compel the bank to take charge of the real estate. The bank took no action. In its view, the property had been abandoned by the trustee to the debtor, and the bank had never taken possession or title to the property. The bankruptcy court agreed with the bank. It found that, under Missouri law, which adopted the "lien theory" of mortgages, the bank held the first lien on the property and nothing more. Therefore, the bank was not an owner of the property and was not responsible for fulfilling the demolition orders issued to the property owner. Until foreclosure, the mortgagor continues to be the owner under Missouri law. *See id.* at 1023. The court concluded that the bank was not liable to the City for the costs of demolition. *See id.* ("The Bank never foreclosed on the real estate held under the deed of trust. Pursuant to Missouri law, Koeller is the owner of the property.")

Finally, the *Koeller* court recognized that a "surrender" of a debtor's collateral involves a mutual agreement between the debtor and the lienholder. Relying on Missouri law and, in particular, on *In re Service*, 155 B.R. 512 (Bankr.E.D.Mo. 1993), the *Koeller* court determined that the debtor could not compel the bank to accept the property that the debtor surrendered. It noted that the bank had the option to pursue foreclosure, but whether it exercised that option was within its discretion. *Id.* (citing *Service*, 155 B.R. at 514). Because the bank did not foreclose on the property, legal title did not pass from Koeller to another party. The court

concluded that Koeller remained the owner of the real estate and that he was responsible for the demolition costs. *See id.* at 1024.

In this case, Phillips attempted to surrender her interest in her property without entering into any agreement with Citifinancial Mortgage, the mortgage holder. She executed and recorded a quit-claim deed to the mortgage holder. In her view, the transfer was proper and Citifinancial had responsibility for the property. However, the City argued that the mortgage holder could not be forced to accept title without its consent. Citifinancial, like the bank in *Koeller*, took no action at all. The court is asked to determine who owns the property.

■ Indiana, like Missouri, has long followed the lien theory of mortgages. See *Geller v. Meek*, 496 N.E.2d 103, 107 n. 11 (Ind.App.1986). It holds, therefore, that the mortgage creates a lien on the property, not title to it.

[I]t is well settled that the mortgagees only have a lien upon the real estate. "The rule, now well established, however, is, that a mortgage creates no estate in the mortgagee, but confers on him only a lien upon the estate of the mortgagor, which estate, by force of the mortgage, can be transferred to the mortgagee only by a foreclosure and sale according to law." *Heavilon v. Farmers Bank of Frankfort*, 1881, 81 Ind. 249, 253. "Indiana is unequivocally committed to the lien theory and the mortgagee has no title to the land mortgaged. The right to possession, use and enjoyment of the mortgaged property, as well as title, remains in the mortgagor, unless otherwise specifically provided, and the mortgage is a mere security for the debt." *Oldham v. Noble*, 1946, 117 Ind.App. 68, 75, 66 N.E.2d 614, 615, 617.

*Kosciusko Cty. Rural Elec. Membership Corp. v. Northern Indiana Public Service Co.,* 248 Ind. 482, 229 N.E.2d 811, 817 (1967). Like Missouri, Indiana defines foreclosure as a legal proceeding that terminates a mortgagor's interest in property. *See Armstrong v. Keene,* 861 N.E.2d 1198, 1201 n. 4 (Ind.App.2007) (using Black's Law Dictionary definition). Under Indiana law, therefore, this court finds, as the *Koeller* court did under Missouri law, that the mortgagor continues to be the owner of the estate until foreclosure. In *Koeller,* the mortgagor and mortgagee entered into a stipulated agreement—stating that the mortgagor surrendered his interest in the property and that the stay was lifted so that the mortgagee could foreclose—but no foreclosure took place. In this case, the mortgagor executed and recorded a quit-claim deed in order to surrender the property, but no foreclosure took place. This court agrees with *Koeller* that the plaintiff could not compel the mortgage holder to accept the surrendered, quitclaimed property. As a consequence, the mortgagor Phillips continues to be the owner of the property, with all the rights and obligations. The court finds, therefore, that the City properly enforced its property maintenance codes against the plaintiff, as owner of the property declared a public nuisance.

The three legal disputes before the court have been resolved in favor of the City. The court has determined that, as a matter of law, the City's enforcement proceedings against the plaintiff Phillips were actions excepted from the automatic stay in Phillips' bankruptcy pursuant to § 362(b)(4). It also has found that, as a matter of law, the City's actions did not violate the post-discharge injunction of § 542(a)(2). Finally, it has concluded that the plaintiff Phillips is the owner of the property that is the subject of the City's enforcement proceedings, even though she executed a quit-claim deed to surrender it to the mortgage holder Citifinancial Mortgage. The City has demonstrated that no genuine issue of material fact is in dispute and that it is entitled to judgment as a matter of law. Accordingly, the court grants the City's Motion for Summary Judgment.

### Conclusion

For the reasons presented in this Memorandum of Decision, the court grants the Motion for Summary Judgment filed by the City of South Bend.

SO ORDERED.