OPINION
{¶ 1} Paul and Mary Joyce Chilton, pro se, appeal from a judgment of the Clark County Court of Common Pleas, which affirmed the denial of a variance by the Springfield Board of Building Appeals ("the Board"). The Chiltons claim that the trial court erred in concluding that the City of Springfield's order to repair or demolish was not subject to the *Page 2 
Bankruptcy Code's automatic stay provision, contained in Section 362(a), Title 11, U.S. Code, and in affirming the Board's decision. For the following reasons, the judgment will be affirmed.
 {¶ 2} Paul and Mary Joyce Chilton are the owners of residential property located at 612 South Wittenberg Avenue in Springfield, Ohio. The property is subject to a mortgage with Security National Bank. The Chiltons are in default of their mortgage, and the bank has obtained a judgment of default. On August 1, 2003, the Chiltons filed a Chapter 13 bankruptcy petition. They indicate that they have an approved reorganization plan with the Bankruptcy Court, which includes plans to rehabilitate 612 South Wittenberg Avenue after the rehabilitation of another property they own. That plan is not part of the record.
 {¶ 3} On August 22, 2005, the City of Springfield Department of Engineering and Planning, Code Enforcement Division, sent the Chiltons separate Notices of Violation and Orders to Repair or Demolish 612 South Wittenberg Avenue. The notices indicated that the property had been inspected and was found to be unfit for human occupation. A two-page attachment listed numerous violations of the property maintenance code, and it ordered the Chiltons to repair the property within thirty days. The notice also indicated that the failure to comply with the order would subject the structure to demolition. Mrs. Chilton filed a Petition for Hearing with the Board of Building Appeals, seeking a variance of the order. On October 20, 2005, after a hearing, the Board denied the variance by a four-to-one vote.
 {¶ 4} On October 24, 2005, the Chiltons appealed the denial of the variance to the Court of Common Pleas. In light of the Chiltons' representation that they had filed a bankruptcy petition, the trial court asked the parties to brief whether the action was subject to the automatic stay provision of the Bankruptcy Code. Relying on City ofShaker Heights v. Green, Cuyahoga *Page 3 
App. No. 82236, 2003-Ohio-4068, the trial court concluded that, pursuant to Section 362(b)(4), Title 11, U.S. Code, the automatic stay did not apply because the action involved "only the enforcement of the City's police and regulatory powers" and it was "not an effort by the City to gain a pecuniary advantage over other creditors." The trial court subsequently affirmed the Board's denial of the variance.
 {¶ 5} The Chiltons raise three assignments of error, which are difficult to follow. However, they appear to raise two general issues: whether the trial court properly determined that the automatic stay did not apply and whether the trial court properly affirmed the denial of the variance. Upon review, we find no fault with the trial court's conclusions.
A. Automatic Stay Due to Bankruptcy Proceeding
 {¶ 6} The Chiltons argue that because they were engaged in bankruptcy proceedings at the time they received the Notices of Violation, the enforcement order was subject to the automatic stay provision contained in Section 362(a). Because the Chiltons' bankruptcy petition was filed in 2003, we must consider the October 21, 1998 version of that statute.
 {¶ 7} At that time, Section 362(a) provided, in relevant part:
 {¶ 8} "Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title * * * operates as a stay, applicable to all entities, of —
 {¶ 9} "(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title; *Page 4 
 {¶ 10} "* * *
 {¶ 11} "(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate."
 {¶ 12} Although the notice of violation was an administrative enforcement action, Section 362(a)(1) relates solely to pre-petition matters and, thus, appears to be inapplicable to this case. See In reKoeller, (Bankr.W.D.Mo.1994), 170 B.R. 1019, 1021; Curtis v. Payton
(Feb. 5, 1999), Greene App. No. 98-CA-49. Section 362(a)(3) applies to both pre-and post-petition matters, and it arguably may form a basis for the application of the automatic stay of the order to repair or demolish the structure.
 {¶ 13} Assuming that Section 362(a) imposed an automatic stay, certain actions are nevertheless exempt from the automatic stay. Under Section 362(b)(4), the filing of a bankruptcy petition does not operate as a stay of the commencement or continuation of an action or proceeding by a governmental unit to enforce its "police and regulatory power." "A condemnation proceeding by a city to rid the city of a structure deemed unsafe is certainly the exercise of a police or regulatory power by a governmental unit and is thereby excepted from the automatic stay of Section 362(a)." Matter of Catalano (Bkrtcy.D.Neb.1993) 155 B.R. 219,221; see, e.g., Javens v. City of Hazel Park (C.A.6, 1997),107 F.3d 359, 370 (demolition orders in enforcement of building codes constituted the exercise of police powers within the meaning of section 362(b)(4)).
 {¶ 14} Here, the City of Springfield issued its Notice of Violation and Order to Repair or Demolish based on its determination that 612 South Wittenberg Avenue was unsafe for human occupation due to numerous violations of the property maintenance code. The City thus *Page 5 
was proceeding under its police and regulatory powers in furtherance of public health, safety, and welfare. The City's order, therefore, was exempt from the automatic stay, pursuant to Section 362(b)(4).
 {¶ 15} The Chiltons argue that Section 362(b)(4) should not apply, because the City of Springfield was a creditor in their bankruptcy proceeding, and it had a pecuniary interest in the demolition of the property. There is no evidence in the record that the City issued its Notice of Violation with the purpose of gaining an advantage over other creditors, nor have the Chiltons identified the benefit the City would receive, other than the fees associated with the demolition. We find no basis to conclude that this minor incidental benefit overrode the City's stated interest in protecting the public health, safety, and welfare of the community by ordering the repair or demolition of an unsafe building.
 {¶ 16} The Chiltons further argue that Section 362(b)(4) should not apply, because the demolition order was not a reasonable exercise of the City's police and regulatory powers. According to the Notice of Violation, 612 South Wittenberg Avenue had been vacant since December 4, 2001, and the building was not secure. There were problems with the structural supports, foundation, exterior walls, roof, gutters and downspouts, chimney, windows, doors and/or door frames, interior walls and floors, and plumbing. In addition, there was no hot or cold running water to the fixtures, and the residence was lacking required smoke detectors. On its face, the Notice of Violation indicates that the City's order to repair or demolish was reasonable.
 {¶ 17} Accordingly, the trial court properly determinated that the automatic stay provision of the Bankruptcy Code was inapplicable. *Page 6 
B. Board's Denial of the Variance
 {¶ 18} The Chiltons next assert that the trial court's decision was based upon insufficient evidence and was against the manifest weight of the evidence. As noted by the City, this is not the proper standard of review for an appeal under R.C. Chapter 2506.
 {¶ 19} In an appeal of an administrative decision under R.C. Chapter 2506, the trial court is authorized to reverse or vacate the administrative order if the court finds the decision is unreasonable or unsupported by a preponderance of substantial, reliable, and probative evidence. R.C.2506.04; Parisi v. City of Dayton, Montgomery App. No. 20045, 2004-Ohio-2739, ¶ 11. The common pleas court "considers the `whole record,' including any new or additional evidence admitted under R.C. 2506.03." Henley v. Youngstown Bd. of Zoning Appeals (2000),90 Ohio St.3d 142, 147, 2000-Ohio-493, 735 N.E.2d 433. The standard of review to be applied by an appellate court is "more limited in scope." Id., citing Kisil v. Sandusky (1984), 12 Ohio St.3d 30, 34,465 N.E.2d 848. Under R.C. 2506.04, the court of appeals does not have the same extensive power to weigh the evidence as is granted to the common pleas court. While "[i]t is incumbent on the trial court to examine the evidence[,] [s]uch is not the charge of the appellate court."Henley, 90 Ohio St.3d at 147. The appellate court's inquiry is limited to whether the trial court abused its discretion. Kisil,12 Ohio St.3d at 34; Parisi at ¶ 12.
 {¶ 20} In reviewing the Board's decision, the trial court succinctly summarized the October 20, 2005 hearing as follows:
 {¶ 21} "* * * Mr. Ritter[, a code enforcement officer of the City's Planning Department,] described the circumstances behind the orders to demolish or repair. The Board Chairman then explained to the Chiltons the standard it would apply to *Page 7 
review their request — (1) whether the variance would not be contrary to the public interest if granted and (2) whether an undue hardship would result if it were not granted.
 {¶ 22} "Mr. Chilton then addressed the Board. He relayed that he has a general contractor's license and he performs most repair work himself. He attributed the slow progress on repairing the subject property to health problems, attention to repairing a second property, and the bankruptcy situation.
 {¶ 23} "Additional questioning from Board members revealed the following about the subject property. The Chiltons purchased it for $12,000. It was last occupied in 2001. In connection with their bankruptcy proceeding, the property was appraised at $24,000 in April 2003, but its condition had deteriorated since then. The City estimated that cost of repair at $20,000. Mr. Chilton stated he believed a plan could be formulated for rehabilitating the property. However, no such plan had materialized by the time of the hearing. Mr. Chilton suggested that he could have the house repaired within six months at a cost of $10,000, but he was unable to substantiate that claim.
 {¶ 24} "After discussion reviewing the procedure leading to the Board hearing, a Board member moved to deny the Chiltons' variance request. The Board then voted four to one to deny. * * *"
 {¶ 25} Upon reviewing the testimony, documents, and photographs presented to the Board, the trial court concluded that the evidence supported Mr. Ritter's conclusion that the structure was unfit for human occupation and that the proper procedures were followed in condemning the structure. Specifically, the trial court found that "the *Page 8 
evidence supported that the structure was in a substantial state of disrepair; that it posed a safety risk to the public; that it had been unoccupied for a long period of time; that there was virtually no prospect of it being occupied in the foreseeable future; and that the cost of repair was near, if not in excess of, the property's value." The court further noted that the Chiltons have failed to establish that the property was safe and that "they had a tangible prospect of repairing the structure within a reasonable time period."
 {¶ 26} We find no fault with the trial court's affirmance of the Board's decision. The photographs and testimony provided by Mr. Ritter substantiated the City's assertion that the house was in substantial disrepair, including, for example, problems with the foundation, roof, doors, exterior walls, and bathroom. The photographs submitted by the Chiltons to the trial court do not refute the existence of these problems. Mr. Ritter indicated that one of the doors to the house (which Mr. Chilton testified was secured by screws) had been kicked open when he viewed the home on August 8, 2005. Although Mr. Chilton indicated that he could "sit down with" the City and work out a timetable for repairs, no plans were presented to the Board. Moreover, the testimony revealed that the Chiltons had allowed the structure to deteriorate since 2001. Considering the extent of the disrepair, the Board reasonably could have concluded that Mr. Chilton's repair estimate of $10,000 was unrealistically low. Upon review of the record, the trial court did not abuse its discretion when it found that the Board's decision was reasonable and supported by the evidence.
 {¶ 27} As a final matter, the Chiltons also argue that various interested parties-the bankruptcy trustee and Security National Bank — were not served with notice of the *Page 9 
Board's hearing and, thus, the Board's decision was defective. (Although the Chiltons raised this argument in the automatic stay portion of their brief, the argument challenges the order itself.) In support of their argument, the Chiltons rely upon Skiffey v. City of Youngstown, Mahoning App. No. 00-CA-56, 2001-Ohio-3470, which noted that R.C. 715.26 required notice to the owners of the property and to lien holders prior to the removal or repair of the building by a municipality. The record establishes that the Chiltons were properly notified that the repairs must be made within thirty days or the structure was subject to demolition; the record is silent as to whether lienholders received a similar notice. Regardless, we fail to see how the Chiltons' rights have been prejudiced.
 {¶ 28} The assignments of error are overruled.
 {¶ 29} The judgment of the trial court will be affirmed.
 BROGAN, J. and GRADY, J., concur. *Page 1